# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARISTA RECORDS, INC., et al., <br><br> Plaintiffs <br><br> v. <br><br> FLEA WORLD, INC., a Pennsylvania corporation, d/b/a Columbus Farmers Market, et al., <br><br> Defendants | CIVIL ACTION <br> Case No. 03cv2670 (JBS) <br><br> **DOCUMENT FILED ELECTRONICALLY** |

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO DISMISS THE AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND TO STRIKE SEPARATE DEFENSES

OF COUNSEL:

RUSSELL J. FRACKMAN
JEFFREY D. GOLDMAN
ERIC J. GERMAN
**MITCHELL SILBERBERG & KNUPP LLP**
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone:  (310) 312-2000
Facsimile:   (310) 312-3100

KAREN A. CONFOY
**STERNS & WEINROTH, P.C.**
50 West State Street Ste. 1400
Trenton, NJ 08607-1298
Telephone:  (609) 392-2100
Facsimile:   (609) 392-7956
Attorney for Plaintiffs

MICHAEL J. HUPPE
**RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC.**
1330 Connecticut Avenue N.W.
Washington, D.C. 20036-1725

# TABLE OF CONTENTS

***Page(s)***

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ....................................................................... 1

ARGUMENT

I          THE COUNTERCLAIMS FAIL TO STATE A CLAIM ............. 2

      A.    The Defamation and "False Light"
           Counterclaims Should Be Dismissed.................................... 3

      B.    The "Tortious Interference" Claim Should Be
           Dismissed ........................................................................... 8

II.       THE SEPARATE DEFENSES SHOULD BE STRICKEN ........ 11

CONCLUSION ............................................................................... 15

i

# TABLE OF AUTHORITIES

## Federal Cases Cited

*Page(s)*

A&M Records, Inc. v. Napster, Inc.
    239 F. 3d 1004 (9th Cir. 2001) ................................................................ 11

American Broad Co. v. Maljack Prods., Inc.
    34 F. Supp. 665 (N.D. Ill. 1998) ............................................................. 11

Botts v. The New York Times Co.
    2003 WL 23162315 (D.N.J. Aug. 29, 2003) ........................................ 3,6

Burdick v. Korner
    988 F. Supp. 1206 (E.D. Wis. 1998) ...................................................... 11

Cibenko
    510 F. Supp. 761 ..................................................................................... 7

Coast Cities Truck Sales, Inc. v. Navistar Intern. Transp. Co.
    912 F. Supp. 747 (D.N.J. 1995) ............................................................. 10

Crawford v. West Jersey Health Systems
    847 F. Supp. 1232 (D.N.J. 1994) .......................................................... 5,6

Edelson v. Ch'ien
    2004 WL 422674 (N.D. Ill.) .................................................................... 7

Eli Lilly & Co. v. Roussel
    23 F. Supp. 2d 460 (D.N.J. 1998) ........................................................... 8

In re Aimster Copyright Litigation
    334 F. 3d 643 (7th Cir. 2003) ........................................................... 12,13

M.C.A.R. v. Realty Photo Master Corp.,
    aff'd, 91 F.3d 132 (4th Cir. 1996)
    878 F. Supp. 804 (D.Md. 1995) ................................................................. 9

Maggio v. Liztech Jewelry
    912 F. Supp. 216 (E.D.La. 1996) .............................................................. 9

Masquerade Novelty, Inc. v. Unique Industries, Inc.
    912 F. 2d 663 (3d. Cir. 1990) ................................................................. 12

Moore v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.
    1990 WL 105765 (D.N.J. July 16, 1990 ..................................................... 4

National Bowl-O-Mat Corp. v. Brunswick Corp.
    264 F. Supp. 221 (D.N.J. 1967) ................................................................ 5

O'Brien v. DiGrazia
    544 F.2d 543 (1st Cir. 1976) .................................................................... 3

Playboy Enters., Inc. v. Webbworld, Inc.
    991 F. Supp. 543 (N.D. Tex. 1997) ........................................................ 11

Playboy Enters., Inc. v. Webbworld, Inc.
    968 F. Supp. 543 (N.D. Tex. 1997) ........................................................ 14

Publ'ns Int'l, Ltd. v. W. Publ'g Co., Inc.
    No. 93C3074, 1994 WL 23008 (N.D. Ill. Jan. 25, 1994) ....................... 11

Ross v. U.S.
    1993 WL 12895 (E.D. Pa. Jan. 15, 1993) ................................................. 2

Scheid v. Fanny Farmer Candy Shops, Inc.
    859 F. 2d 434 (6th Cir. 1988) .................................................................. 3

Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.
    764 F.2d 69 (2d Cir. 1985) ...................................................................... 9

Sogevalor, SA v. Penn Cent. Corp.
    711 F. Supp. 890 (S.D.Ohio 1991) .......................................................... 3

Tellado v. Time-Life Books, Inc.
    643 F. Supp. 904 (D.N.J. Sep 03, 1986)................................................... 7

Thomason v. Lehrer, 183 F.R.D. 161 (D.N.J. 1998),
    aff'd, 189 F.3d 465 (3d Cir. 1999) ...................................................... 10

UMG Recordings, Inc. v. Sinnott
    300 F. Supp. 2d 993 (E.D. Cal. 2004) ................................. 11,12,13,14,15

U.S. v. Kramer
    757 F. Supp. 397 (D.N.J. 1991)............................................................ 11

Xerox Corp. v. SCM Corp.,
    576 F.2d 1057 (3d Cir. 1978) ................................................................ 6

## State Cases Cited

Beck v. Tribert,
    312 N.J. Super. 335 (App. Div.)............................................................. 3

Cappello v. Scott
    274 N.J. Super. 282 (N.J. Super. A.D. 1994) ........................................... 7

Hawkins v. Harris,
    661 A.2d 284 (N.J. 1995) .................................................................... 7

Middlesex Concrete Products & Excavating Corp. v. Carteret
    Industries Ass'n, 68 N.J. Super. 85 (App. Div. 1961)............................. 10

Rainier's Dairies v. Raritan Valley Farms Inc.,
    19 N.J. 552 (1955) ............................................................................. 9

## Federal Statutes Cited

17 U.S.C. §107................................................................................. 15

17 U.S.C. §109............................................................................. 14,15

17 U.S.C. §411(a) ............................................................................ 12

17 U.S.C. §504(c) ........................................................................ 13,14

28 U.S.C. §1338 ................................................................................ 12

## **Rules Cited**

Fed.R.Civ.P. 8 ................................................................................ 2

## <u>PRELIMINARY STATEMENT</u>

In the first six pages of their Opposition Brief ("Opposition"), Defendants allege numerous irrelevant, unsupported and incorrect statements; ultimately, Defendants still fail to state a claim. Defendants' inability to do so is all the more striking given that they had the benefit of reviewing Plaintiffs' motion to dismiss the original counterclaim. Nevertheless, the allegations of the Amended Answer and Counterclaims (the "Amended Pleading") remain vague, non-specific and incomplete, omitting even the most basic substantive information.

Defendants' rote and repeated mantra regarding the principles of notice pleading cannot elevate their allegations to the level of stating a claim. The continued omission of specific allegations, however, reflects more than just a faulty reliance upon those principles — it is clear that Defendants have failed to plead with reasonable specificity because ***Defendants do not have any specifics to provide.*** Defendants argue that the obvious omissions are mere fodder to explore in discovery, but this is no justification to permit patently insufficient claims to proceed. Not only does the Amended Pleading fail to provide Plaintiffs with adequate notice of the claims, it obfuscates critical facts that are necessary to assess the sufficiency of the Amended Pleading, including the time and context of the alleged claims.

1

In addition, Defendants' dogged adherence to separate defenses that have no application illustrates Defendants' misunderstanding of (or their attempt to ignore) the doctrines of secondary copyright liability. Defendants' boilerplate defenses do not apply to those claims, and unnecessarily complicate and burden the litigation.

## **ARGUMENT**

## I. **THE COUNTERCLAIMS FAIL TO STATE A CLAIM**

The Amended Pleading provides essentially no information about Defendants' claims.[1] For example, Defendants fail to plead whose conduct is at issue (which of the many Plaintiffs or which alleged "agent" of Plaintiffs, and what is that agent's connection to Plaintiffs)? When and where did the alleged conduct occur? The claims do not specify anything about the time, place or substance of the alleged conduct. They do little more than recite the name and some of the elements of the torts asserted. Such conclusory assertions are insufficient. See 5A Wright & Miller, Federal Practice & Procedure, § 1357 at 318 (2d ed. 1990) ("[a]lthough the pleading requirements of Rule 8(a) are very liberal, more detail

---

[1] Paragraphs 2-8 of Defendants' counterclaims, which consist of their only real factual allegations, are simply a diatribe against Plaintiffs and a proclamation of innocence. While Plaintiffs disagree with these assertions, the fact is, they are totally irrelevant to the counterclaims themselves. By contrast, the actual allegations of wrongdoing in the Amended Pleading are sparse and incomplete. Ross v. U.S., 1993 WL 12895, *2 (E.D. Pa. Jan. 15, 1993) ("complaints which ramble, which needlessly speculate, accuse and condemn and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system and must be dismissed.").

2

often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant"); see also Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir.1988) ("[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind [R]ule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.") (quoting O'Brien v. DiGrazia, 544 F.2d 543, 546 n. 3 (1st Cir.1976)); Sogevalor, SA v. Penn Cent. Corp., 771 F. Supp. 890, 894 (S.D. Ohio 1991).

A.   **The Defamation and "False Light" Counterclaims Should Be Dismissed**

Failure to Allege Basic Elements of the Claims.   The Amended Pleading does not sufficiently plead the elements of "false light" and defamation.[2] The allegations are vague and non-specific about what little they do say, omitting, for

---

[2] The elements of these claims are described in Plaintiffs' opening brief.  To state a "false light" claim, Defendants must allege that Plaintiffs made statements about them that "constitute a major misrepresentation of [their] character, history, activities or beliefs," that such statements would be "highly offensive to a reasonable person," and that Plaintiffs acted with "reckless disregard as to the falsity of the publicized matter."  Botts v. The New York Times Co., 2003 WL 23162315, *5-6 (D.N.J. Aug. 29, 2003).  To state a claim for defamation, Defendant must allege a false and defamatory statement of fact about Defendants that Plaintiffs knew or should have known was false communicated to third parties, causing damages.  Beck v. Tribert, 312 N.J. Super. 335, 339-350 (App. Div. 1998).

example, who allegedly said what to whom, about which defendant they allegedly said it, when they allegedly said it, and why the alleged statement was false and/or defamatory.  Plaintiffs are left to guess as to the nature of the very conduct that forms the basis of the suit.

Defendants argue that they are not required to set forth "a verbatim transcript of words spoken, accompanied by an exhaustive narrative of circumstances and accounting for damages."  Opposition at 10.  Far short of an "exhaustive narrative," ***Defendants have provided no substantive information at all***.  The only clue in the Amended Pleading as to the subject matter of the alleged statements is that ***some*** of the unspecified "falsities" and statements at issue involve "allegations" at some unspecified time to unspecified persons, that unspecified Defendants "engaged in" and/or "promoted" illegal activities at their market.  Amended Pleading, at Counterclaims ¶¶ 8, 12; <u>see</u> 5A Wright & Miller § 1357 ("[w]hen the claim alleged is a traditionally disfavored cause of action, such as malicious prosecution, libel, or slander, the courts tend to construe the complaint by a somewhat stricter standard and are more inclined to grant a Rule 12(b)(6) motion to dismiss"); <u>see</u> <u>also</u> <u>Moore v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.</u>, 1990 WL 105765 (D.N.J. July 16, 1990) (dismissing "false light" claim due to "insufficient allegations in the complaint to support [plaintiff's] conclusory claim").

Failure to Allege Specific Time.   The defamation and "false light" counterclaims should also be dismissed because they do not specify the dates of the alleged conduct (likely because they would be time-barred), and thus, the Court cannot apply the statute of limitations.   See National Bowl-O-Mat Corp. v. Brunswick Corp., 264 F. Supp. 221, 226 (D.N.J.1967); see also 5 Wright & Miller § 1309 at 698 ("[I]n libel and slander suits the time and place of the publication of the alleged defamatory matter should be specifically stated in the complaint"); Crawford v. West Jersey Health Systems, 847 F. Supp. 1232, 1239 (D.N.J. 1994) (defamation action omitted any dates for the alleged defamation, thereby preventing the application of the New Jersey statute of limitations).   Although Defendants rely upon Crawford (Opposition at 9-10), Crawford supports dismissal of the counterclaim.   The Court stated that "[t]o withstand a motion to dismiss, a complaint alleging defamation must include facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague, conclusory allegation is not enough."  847 F. Supp. at 1238.  The Court held in that case that the complaint sufficiently identified "the persons who made the defamatory statements," "the defamatory words," and "the fact of the publication of these statements."   Id. at 1238-39.   Even the Crawford complaint (which included much greater specificity than Defendants' counterclaim) did not,

5

however, state a claim for defamation because it was not specific as to time sufficient to allow for the application of the statute of limitations.  Id. at 1239.

Defamation and "false light" actions are subject to a one-year statute of limitations, see N.J.S.A. § 2A:14-3; Botts, 2003 WL 23162315, at *6, which begins to run on the date of first publication."  Id. at *4.  The documented history of piracy at the Columbus Farmers Market dates to June 2000.  See Opening Brief at 5-7.  Defendants did not file their original counterclaim until October 29, 2003. Thus (assuming, arguendo, that the filing of the original counterclaim tolled the statute of limitations), Defendants' claims for statements that allegedly were first published prior to October 29, 2002, are time-barred.[3]  This disposes of almost the entirety of the parties' ***pre-litigation*** interactions, as Defendants' admit that the

---

[3] Defendants may argue that the statute of limitations is tolled as of the filing of the complaint.  Plaintiffs believe that argument is incorrect, as these counterclaims are not "compulsory" and do not arise from the same "transaction or occurrence" as Plaintiffs' claims.  See 6 Wright & Miller § 1419, at 152 ("[a]lthough there is some conflict on the subject, the majority view appears to be that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim").  The counterclaims involve different law, different facts, different actors and a different alleged harm than do Plaintiffs' claims for copyright infringement.  See, e.g., Xerox Corp. v. SCM Corp., 576 F.2d 1057 (3d Cir. 1978) (patent infringement claim did not arise from same transaction or occurrence as antitrust claim alleging that patent holder misused its entire patent portfolio).  However, whether or not the counterclaims relate back, they nevertheless are deficient because they do not specify the date of the alleged conduct and almost all of the relevant conduct would be time-barred, as the documented infringement dates back to June 2000, and the complaint was filed in June 2003.

"last raid" at the market took place on November 7, 2002.   See Opposition Opposition at 3.  The dates of the alleged conduct therefore are crucial, see Fed. R. Civ. P. 9(f) ("[f]or the purpose of testing the sufficiency of a pleading, averments of time and place are material").

The Absolute Litigation Privilege.   As respects *post-litigation* conduct, Defendants *admit* that Plaintiffs are immune from liability for statements made in the Complaint.   See Opening Brief at 15-17; Opposition at 11-13; Hawkins v. Harris, 661 A.2d 28 4 (N.J. 1995).[4]

The Statements at Issue Are True.   Truth is an absolute defense to defamation and "false light" claims.   See, e.g., Cibenko, 510 F. Supp. 761, 766-67; Tellado v. Time-Life Books, Inc., 643 F. Supp. 904, 907 (D.N.J. Sep 03, 1986).  These counterclaims, therefore, should be dismissed because *Defendants admit that the general statement they complain of is true*.   Amended Pleading, at Answer ¶¶ 2 (admitting  infringing sales at market, but arguing about the amount of such sales relative to Defendants' entire business), 37 (reasons why vendors who previously have sold illegal recordings at Defendants' market might not

---

[4] Even statements made to the press reporting on the contents of the complaint and/or the filing of the lawsuit are entitled to a qualified litigation privilege, which can only be overcome if plaintiff acted with malice, i.e., it knew the statements were false and made them anyway with bad faith/improper intent.  Cappello v. Scott, 274 N.J.Super. 282, 284, 644 A.2d 102, 103 (N.J.Super.A.D.1994).  Thus, defendant must plead malice to defeat a motion to dismiss, Edelson v. Ch'ien, 2004 WL 422674 (N.D. Ill.) (applying New Jersey law),which Defendants do not do.

return), 38 ("it is not impossible" that infringing recordings were sold at the market), 39 (describing police seizure of infringing recordings at the market); Counterclaims ¶¶ 5-7 (describing Defendants' efforts to control the sale of infringing recordings at the market).

### B.   The "Tortious Interference" Claim Should Be Dismissed

<u>Failure to Allege Basic Elements.</u>  The Amended Pleading should further be dismissed because it does not sufficiently allege the elements of "tortious interference," i.e.:

> "(1) [a] continuing or prospective economic relationship or reasonable expectation of economic advantage; (2) the defendant knew of such relationship of expectancy; (3) the interference and harm inflicted were done intentionally and with 'malice' in the sense of conduct that is wrongful and without justification or excuse; (4) if not for the interference, it was reasonably probable that plaintiff would have realized its economic advantage; and (5) the plaintiff was injured as a result of defendant's conduct." <u>Eli Lilly & Co. v. Roussel</u>, 23 F.Supp.2d 460, 493-94 (D.N.J. 1998); <u>see</u> Opening Brief at 13-14.

The Amended Pleading ***does not even allege the existence of any contract***, <u>see</u> Counterclaims at ¶16 (merely alleging a "continuing relationship" between the market and certain unidentified vendors), or, for example: Who were the parties to the contract?  Who allegedly interfered with the contract?  When and where did the interference happen?  What was the basis of the asserted contractual relationship (and what was the nature, scope and terms of the allegedly contractual relation)?

Moreover, "malice" is a necessary element of the claim, i.e., that Plaintiffs' actions were without justification or excuse.  Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563 (1955).  Defendants admit that Plaintiffs' actions were an effort to protect themselves from copyright infringement (Answer at ¶¶ 2, 37, 38, 39), a wholly legitimate endeavor.  See, e.g., Shapiro & Son Bedspread Corp. v. Royal Mills Assocs., 764 F.2d 69, 75 (2d Cir. 1985) (notifications to customers that a company's goods infringe copyright were not in bad faith, even if the copyright proved to be invalid); M.C.A.R. v. Realty Photo Master Corp., 878 F. Supp. 804, 818 (D. Md. 1995) (same), aff'd, 91 F.3d 132 (4th Cir. 1996); Maggio v. Liztech Jewelry, 912 F. Supp. 216, 221-22 (E.D. La. 1996) (same).  As these cases clearly indicate, Plaintiffs' attempts to protect and secure their copyrights cannot constitute "malice."

Defendants argue that Plaintiffs have sent "representatives through the market on a regular basis to harass and annoy law abiding vendors in retribution against the Defendants whom the Plaintiffs have characterized as villains, or to use the Plaintiffs['] exact language, 'pirates.'"  Opposition at 11.  In addition to being privileged conduct, Defendants have not specified any of those "representatives," have not identified any of the vendors who were allegedly "harassed" or "annoyed" ("law-abiding" or otherwise), have not alleged anything at all about Plaintiffs' supposed motive for "retribution" or the source of this alleged "exact

language," and have not specified the date or even the general time period in which any of this conduct occurred.  See, e.g., Coast Cities Truck Sales, Inc. v. Navistar Intern. Transp. Co., 912 F. Supp. 747, 774 (D.N.J. 1995) (dismissing interference claim that did not "specify some reasonable expectation of economic benefit or, in other words, the existence of a contract or the likelihood that a contract with a particular party would have been actualized but for defendant's wrongful intercession").

  The Absolute Litigation Privilege.  Without more contextual information, the application of the litigation privilege to the "tortious interference" claim cannot be determined.  Were the vendors or other persons witnesses to copyright infringement, and did the alleged interactions occur as part of Plaintiffs' investigation of its claims?  If so, the litigation privilege immunizes Plaintiffs from liability.  See, e.g., Thomason v. Lehrer, 183 F.R.D. 161, 170 (D.N.J.1998) (applying litigation privilege to tortious interference claim), aff'd, 189 F.3d 465 (3d Cir.1999), abrogated on other grounds by U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383 (3d Cir.2002); Middlesex Concrete Products & Excavating Corp. v. Carteret Industries Ass'n, 68 N.J.Super. 85, 172 A.2d 22 (App. Div. 1961) (same).

## II. THE SEPARATE DEFENSES SHOULD BE STRICKEN

  The Amended Pleading reasserted all of Defendants' previous defenses (even the two that Defendants had conceded should be dismissed) and added nine

more.  Defendants' Opposition withdraws three of the twenty-three challenged defenses.  The other challenged defenses have no bearing on the eventual outcome of this litigation.  If they are not stricken, the scope of discovery and the time and expense of litigation will greatly expand.  See <u>U.S. v. Kramer</u>, 757 F. Supp. 397 (D.N.J. 1991) (motions to strike "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not effect the outcome of the case").

The First Separate Defense: Non-Discriminatory Acts.  "Discrimination" or lack thereof, Defendants' state of mind and/or the "legitimacy" of Defendants' business motives are not relevant to any of the elements of secondary liability.  Constructive knowledge of infringing activity is sufficient for contributory infringement; actual knowledge is not required.  See <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1020 (9th Cir. 2001); <u>UMG Recordings, Inc. v. Sinnott</u>, 300 F. Supp.2d 993, 1000 (E.D. Cal. 2004).  Vicarious liability has ***no state of mind requirement*** – the defendant need not even be aware of the infringing activity.   See <u>Burdick v. Koerner</u>, 988 F.Supp. 1206, 1209 (E.D.Wis.1998); <u>Playboy Enters., Inc. v. Webbworld, Inc.</u>, 991 F.Supp. 543, 553-54 (N.D.Tex.1997).

The Fourth Separate Defense: Failure to Exhaust Administrative Remedies.  Copyright jurisdiction is exclusive in the District Courts.  28 U.S.C. § 1338.  There

are no administrative remedies to exhaust.  Masquerade Novelty, Inc. v. Unique Industries, Inc., 912 F.2d 663 (3d. Cir. 1990) (Opposition at 14), deals with **registration** of a work with the Copyright Office prior to filing suit.  17 U.S.C. § 411(a).  Plaintiffs have complied with that requirement.  See Amended Complaint at ¶ 30.

The Sixth and Seventh Separate Defenses: Lack of Negligence.  This is not a negligence case, nor is negligence an element of Plaintiffs' claims.

The Eighth Separate Defense: Damages Due to Plaintiffs' Own Conduct. Either Defendants are contributorily and vicariously liable, or they are not. Plaintiffs' alleged conduct (which Defendants nowhere describe) is irrelevant.

The Ninth Separate Defense: Third Party Negligence.  Defendants argue (Opposition at 16) that the direct infringers (vendors) are third parties whose infringement (not negligence) absolves Defendants of liability.  The activities of direct infringers are not a defense — instead there must be direct infringement for Defendants to be liable as secondary infringers, Sinnott, 300 F.Supp.2d at 997 ("[e]stablishing direct copyright infringement by the . . . vendors is a prerequisite to both the contributory and vicarious copyright infringement claims"), although the direct infringers need not be named as defendants.  See, e.g., In re Aimster Copyright Litigation, 334 F.3d 643, 646 (7th Cir. 2003) ("suing a multitude of individual infringers" may not be practical and is not required).

The Tenth Separate Defense: Governmental Immunity.   The lack of law enforcement activity does not absolve Defendants of civil copyright liability.  See Sinnott, 300 F.Supp.2d at 999-1000 (rejecting argument that flea market was not contributorily liable based in part upon the lack of law enforcement activity).

The Eleventh Separate Defense: Damages Are "Speculative."  Damages for infringement, including actual damages, are specified by statute.  Plaintiffs  may elect the measure of damages (including statutory damages), "instead of actual damages and profits," before final judgment.  17 U.S.C. § 504(c).

The Thirteenth Separate Defense: Denial of Liability.   This defense is self-evidently superfluous.

The Fifteenth Separate Defense: No Damages.  Plaintiffs are not required "to provide the Defendants with any information regarding its [sic] damages." Opposition at 18.  Plaintiffs may elect the measure of damages "at any time before final judgment is rendered."  17 U.S.C. § 504(c).

The Sixteenth Separate Defense: Corporate Immunity.  Defendants admit that "it is not always necessary to prove fraud or pierce the corporate veil to hold the principles of a corporation liable" for secondary copyright infringement. Opposition at 20.  If Ackerman or Pratt had knowledge of the infringing activities and materially contributed to them, or had the right and ability to supervise or control the infringing activities but failed to do so while profiting from them, then

13

they are individually liable *regardless of their corporate affiliation*.  See, e.g., Playboy Enterprises, Inc. v. Webbworld, 968 F.Supp. 1171 (N.D. Tex. 1997) (corporate owners individually liable for secondary copyright infringement).

The Eighteenth, Nineteenth, and Twentieth Separate Defenses: No Legal Duty to Provide Police Investigations.  Defendants' liability is based upon their contribution to infringing activities and failure to exercise control over their vendors on their premises.

The Twenty-First Separate Defense: Plaintiffs' Duty to Control.  Plaintiffs are not required to police Defendants' premises.  See Sinnott, 300 F.Supp.2d at 1001-02 (argument that flea market lacked the ability to police infringing music was "so devoid of any merit that, quite frankly, it offends the Court.").

The Twenty-Fourth Separate Defense: Mitigation of Damages.  Plaintiffs have no duty to mitigate actual damages (nor do Defendants describe how they could have done so), and can elect the measure of damages, including statutory damages, at any time before final judgment.  17 U.S.C. § 504(c).

The Twenty-Fifth Separate Defense: First Sale Doctrine.  Plaintiffs are not asserting *direct* infringement claims.  Their secondary infringement claims are not based upon "second hand sales of properly licensed compact disks and cassettes." Opposition at 26.  They involve secondary liability for the sale of *infringing*

14

recordings.  Those recordings are not "lawfully made," and the first sale doctrine does not apply.  17 U.S.C. § 109.

The Twenty-Sixth Separate Defense: The Fair Use Doctrine.  Plaintiffs' claims are not based upon uses for "teaching, research, criticism or reporting." Opposition at 27.  They involve the sale of counterfeit and pirate reproductions of Plaintiffs' copyrighted works for commercial sale and distribution.  The fair use doctrine does not apply.  17 U.S.C. § 107.

The Twenty-Seventh Separate Defense: *De Minimis*.  The direct infringements are not *de minimis* – they are copies of entire works.

The Thirty-Third Separate Defense: No Financial Benefit.  This is an element of Plaintiffs' vicarious liability claim, not an affirmative defense.  See, e.g., Sinnott, 300 F.Supp.2d at 1001.

## Conclusion

Plaintiffs respectfully submit their motion should be granted.

Respectfully submitted,
**STERNS & WEINROTH, P.C.**
A Professional Corporation
Attorneys for Plaintiffs

By:   /s/ Karen A. Confoy
Karen A. Confoy
kconfoy@sternslaw.com

Dated:  April 16, 2004

15