NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ARISTA RECORDS, INC., ATLANTIC
RECORDING CORPORATION, BMG
MUSIC, CAPITOL RECORDS, INC.,
ELEKTRA ENTERTAINMENT GROUP,
INC., FONVISA, INC.,
INTERSCOPE RECORDS, MOTOWN
RECORD COMPANY, L.P., PRIORITY
RECORDS LLC, SONY MUSIC
ENTERTAINMENT, INC., UMG
RECORDINGS, INC., VIRGIN             HON. JEROME B. SIMANDLE
RECORDS OF AMERICA, INC.,
WARNER BROS. RECORDS INC. AND        Civil Action
ZOMBA RECORDING CORPORATION,         No. 03-2670 (JBS)

        Plaintiffs,

    v.                              **OPINION**

FLEA WORLD, INC., a
Pennsylvania corporation,
d/b/a Columbus Farmers Market;
FLEA WORLD LLC, a New Jersey
Corporation, d/b/a Columbus
Farmers Market; COLUMBUS
FARMERS MARKET LLC, a New
Jersey Corporation, d/b/a
Columbus Farmers Market; JOHN
ACKERMAN, an individual;
CHARLES PRATT, an individual;
and DOES 1 through 20,

        Defendants.

---

APPEARANCES:

Karen A. Confoy, Esq.
STERNS & WEINROTH, P.C.
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, NJ 08607-1298
    and

Russell J. Frackman, Esq.
Jeffrey D. Goldman, Esq.
Eric J. German, Esq.
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
     and
Michael J. Huppe, Esq.
RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC.
1330 Connecticut Avenue N.W.
Suite 300
Washington, D.C. 20036-1725
     Attorneys for Plaintiffs

Matthew R. McCrink, Esq.
McCRINK, NELSON & KEHLER
475 Route 73 North
West Berlin, NJ 08091
     Attorney for Defendants

**SIMANDLE**, District Judge:

This matter comes before the Court upon Plaintiffs' motion to dismiss the amended counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) and to strike certain separate defenses to the Amended Complaint.  For the reasons discussed below, Plaintiffs' motion to dismiss will be granted and Defendants' counterclaim shall be dismissed without prejudice and with leave granted to amend.  In addition, Defendants' first, fourth, ninth, tenth, sixteenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-fifth, and twenty-sixth separate defenses will be struck.

## BACKGROUND

### Parties and Procedural History

Plaintiffs are fourteen member companies of the Recording Industry Association of America ("RIAA").  The RIAA is a not-for-

profit trade association whose member companies create, manufacture and/or distribute approximately 90 per cent of all legitimate sound recordings sold in the United States.  The Defendants are Flea World, Inc., Flea World LLC, Columbus Farmers Market LLC, John Ackerman and Charles Pratt, the owners and operators of the Columbus Flea Market ("Flea Market").

Plaintiffs filed their Complaint on June 3, 2003, alleging that Defendants ignored repeated demands from the RIAA to curtail the sale of pirated and counterfeit compact discs ("CDs") and cassette tapes ("cassettes") at the Flea Market.  Plaintiffs asserted claims for contributory and vicarious copyright infringement.  On October 1, 2003, Plaintiffs filed an Amended Complaint identifying over 7,500 pirated recordings that had been sold at the Flea Market.  Plaintiffs also added Flea World LLC and Columbus Farmers Market LLC as additional defendants.

Defendants filed their Answer, Separate Defenses and Counterclaim on October 29, 2003, admitting that they provided space and facilities to vendors who have sold and continue to sell pirated and counterfeit CDs and cassettes.  Plaintiffs filed a motion to dismiss the Counterclaim and to strike eighteen of the asserted defenses.  After the motion was fully briefed and submitted to this Court, Defendants filed their Amended Answer and Counterclaim.  The Answer itself was not amended, but Defendants asserted nine new defenses and amended their

Counterclaim to plead in three separate counts that Plaintiffs are liable under claims of false light, defamation and tortious interference.  Plaintiffs now move to dismiss the Amended Counterclaim and to strike twenty-three defenses.  The Court heard oral argument on May 19, 2004.

Underlying Facts

The Columbus Flea Market, one of the largest flea markets on the east coast, is a farmers market on Route 206 in Burlington County in Southern New Jersey.  It is a combination 200-acres outdoor flea market and indoor 80,000 square foot complex.  In exchange for payment, the Flea Market, pursuant to written lease agreements, provides its vendors with the facilities and services necessary for them to operate, including booth space, parking, utilities, food and drink concessions and customers.  Defendants also advertise extensively to promote the Flea Market and the products of their vendors.

The Flea Market has engaged both its own security force and the local police to patrol for pirated and counterfeit goods.  In fact, Defendants contend that after the RIAA made the market aware of a potential problem with counterfeit CDs and cassettes being sold, they contracted with the local police to monitor the market for pirated goods on a regular basis.

Plaintiffs contend that Defendants have blatantly continued to provide Flea Market vendors the site, facilities and market to

4

openly sell pirated and counterfeit CDs and cassettes, despite
the fact that law enforcement agencies have conducted multiple
raids of the premises and seized thousands of infringing CDs and
cassettes, and the RIAA has repeatedly notified Defendants of
their vendors' infringing activities and offered to assist the
Flea Market in curtailing unlawful sales.

Defendants respond, however, that they made numerous
attempts to work with the RIAA, in addition to efforts undertaken
alone, to correct any problem that might have existed and to
prevent any future problems with counterfeit CDs and cassettes.
Those steps include posting anti-counterfeit signs, printing on
the admissions tickets that counterfeiting was prohibited,
patrolling the market for counterfeit goods, and hiring local
police to enforce the same.  Unfortunately, due to the volume of
literally thousands of people, Defendants argue that it is
difficult if not impossible to monitor all the particular vendors
for counterfeit goods.

On or about June 4, 2000, the Springfield Police Department,
in conjunction with the Burlington County Prosecutor's Office,
raided the Flea Market, arrested twelve individuals, and seized
infringing CDs and cassettes.  Thereafter, on or about June 6,
2000, the RIAA notified Defendants in writing of their vendors
and their infringing conduct and of their violations of
Plaintiffs' rights.  The RIAA also alerted Defendants to the

5

applicable federal law and demanded that they cease facilitating infringement.  On or about July 26, 2000, the RIAA again notified Defendants in writing that infringements were a continuing problem at the market.  A representative of the Burlington County Prosecutors' Office subsequently spoke to Defendant Ackerman about the continuing infringement.

On or about November 1, 2001, representatives of the RIAA and the Springfield Police Department attempted to speak to the Head of Security for the Flea Market to inform him of continuing infringement.  He is alleged to have refused to speak with them.  On or about December 6, 2001, a representative of the RIAA informed a representative of the Flea Market of the presence of at least ten vendors selling infringing recordings.  On or about January 7, 2002, the RIAA again notified Defendants in writing that the infringement was continuing, attached relevant case law showing Defendants' liability, and again offered to train Defendants.  On or about February 8, 2002, the RIAA yet again notified Defendants in writing that infringement was continuing.  On or about March 7, 2002, the RIAA met with Defendants and counsel to discuss the continuing piracy problems and on or about May 21, 2002, counsel for the Flea Market asserted that the "problem had been corrected" and that all vendors selling questionable products had been excluded.

On or about August 15, 2002, another law enforcement raid of

the Flea Market premises took place, in which four vendors were arrested and approximately 647 illegal CDs were seized.  On or about November 7, 2002, another law enforcement raid of the Flea Market premises yielded two additional arrests and the seizure of approximately 2,300 illegal CDs.  On the same date, as RIAA representative spoke with the Head of Security regarding the continuing presence of infringing recordings.  (See generally, Answer ¶¶38-39).

Defendants are in control of the operation of the Flea Market and monitor and control the conduct of their vendors and the nature of merchandise being sold.  (Answer ¶¶24-25). Defendants have not implemented any rules, or employed any practices or procedures, that would reduce or eliminate infringement on their premises.  (Answer ¶¶2, 37).

## DISCUSSION

A.   Motion to Dismiss Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank,

7

748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not necessary for the movant to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977); In re Midlantic Corp. Shareholder Litigation, 758 F. Supp. 226, 230 (D.N.J. 1990).  The question before the court is not whether movants will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the pleadings and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the non-movant, the allegations state a legal claim.  Markowitz, 906 F.2d at 103.  Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter, are taken into consideration.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

B.   Defendants' Counterclaims

　　　1.   Claim for False Light

In order to state a claim for false light, Defendants must allege that: (1) statements made by Plaintiffs about them "constitute a major misrepresentation of [their] character, history, activities or beliefs," (2) the statements would "be highly offensive to a reasonable person," and that (3) Plaintiffs acted in "reckless disregard as to the falsity of the publicized matter."  Botts v. The New York Times Co., 2003 WL 23162315 *5-6 (D.N.J. Aug. 29, 2003)(quoting Romaine v. Kallinger, 109 N.J. 282, 294-95 (1988)).  Moreover, false light claims are subject to a one year statute of limitations.  Id.

Plaintiffs contend that Defendants have failed to allege facts sufficient to state a claim for false light.  The Amended Counterclaim states generally only that Plaintiffs "have published several highly offensive falsities regarding the defendants" which misrepresent Defendants' "character, history, activities and beliefs."  Defendants, in reply, contend that all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fednav Ltd. v. Sterling Intern., 572 F. Supp. 1268 (N.D. Cal. 1983).  Defendants argue that their Counterclaim does all that is required; that is, it sets forth a claim for false light and puts the Plaintiffs on notice of the claims against them.  See Turkish State Rys.

9

<u>Administration v. Vulcan Iron Works</u>, 152 F. Supp. 616 (M.D. Pa.
1957)(holding that the function of pleadings is merely to give
notice while the deposition-discovery process serves to narrow
and clarify basic issues and ascertain facts).

Defendants' pleading, however, fails to allege which of the
Plaintiffs made any statement, and does not set forth what was
stated, to whom or when, or how the statements were highly
offensive or misrepresented Defendants' character, history or
beliefs.  Thus, Defendants have not clearly set forth the
essential elements of a false light claim sufficient to provide
Plaintiffs with adequate notice.  In addition, without any
allegation as to when any statement was made, the Court cannot
evaluate whether the claim was properly filed within the one year
statute of limitations.  Clearly then, Defendants' Counterclaim
for false light must be dismissed at this time without prejudice
and leave be granted to Defendants to amend.

2.  <u>Defamation Claim</u>

The New Jersey Supreme Court has stated that the threshold
inquiry in a defamation or slander suit is "'whether the language
used is reasonably susceptible of a defamatory meaning.'" <u>Ward v.
Zelikovsky</u>, 136 N.J. 516, 528 (1994)(quoting <u>Kotlikoff v. The
Community News</u>, 89 N.J. 62, 67 (1982)); <u>Karnell v. Campbell</u>, 206
N.J. Super. 81, 88 (App. Div. 1985)(quoting <u>Kotlikoff</u>, 89 N.J. at
67).  Whether the meaning of a statement is susceptible of a

defamatory meaning is a question of law for the court to resolve.
Ward, 136 N.J. at 629 (citing Kotlikoff, 89 N.J. at 67).  Whether
a statement is defamatory depends on its content, verifiability,
and context.[1]  Lynch v. New Jersey Educ. Ass'n, 161 N.J. 152, 167
(1999)(citing Ward, 136 N.J. at 529).  A defamatory statement is
one that is "injurious to the reputation of another" or exposes
one to "hatred, contempt or ridicule."  Leers v. Green, 24 N.J.
239, 251 (1957).

     Under New Jersey law, defamation is defined as: (1) a
defamatory statement of fact made by a person; (2) concerning the
party making the claim; (3) that was false; (4) that was
communicated to third persons with knowledge of falsity; (5) with
reckless disregard or negligence in determining the truth or
falsity; and (6) which caused damages.  Beck v. Tribert, 312 N.J.
Super. 335, 349-50 (App. Div. 1998), certif. denied, 156 N.J. 424
(1998); Printing Mart-Morristown v. Sharp Electronics Corp., 116
N.J. 739, 765 (1989).  Defendants must allege the necessary
elements of a defamation claim with a degree of specificity
sufficient to give notice of the claim and the grounds upon which

---

[1]     Evaluation of content involves consideration of a
statement's literal meaning, and also of the fair and natural
meaning that reasonable people of ordinary intelligence would
give to it.  Lynch, 161 N.J. at 167 (citing Ward, 136 N.J. at
529).  A statement's verifiability refers to whether it can be
proved true or false.  Lynch, 161 N.J. at 167.  Statements of
opinion, which reflect a state of mind, generally cannot be
proved true or false.  Id.

11

it is based.  Fed. R. Civ. P. 8; <u>Palladino v. VNA Southern New
Jersey, Inc.</u>, 68 F. Supp. 2d 455, 475 (D.N.J. 1999).  A claim for
defamation must include "facts sufficient to identify the
defamatory words, their utterer and the fact of their
publication."  <u>Crawford v. West Jersey Health Systems</u>, 847 F.
Supp. 1232, 1238 (D.N.J. 1994)(quoting <u>Zoneraich v. Overlook
Hospital</u>, 212 N.J. Super. 101 (App. Div. 1986)).

     Plaintiffs contend that Defendants' allegations are vague
and conclusory, failing to provide the kind of notice
contemplated by the Federal Rules of Civil Procedure.  Defendants
allege only that "Plaintiffs" made false statements "including
allegations that [Defendants] engaged in and promoted illegal
activities at the Market" to unspecified "third parties,"
"including vendors and patrons and to reporters."  Amended
Counterclaim ¶¶12-13.  However, there is no allegation
identifying which of the fourteen Plaintiffs is claimed to have
actually made any statement, no allegation to whom the alleged
statement was made, no allegation as to what the defamatory
statement was, and no allegation as to when any such statement
was made.  Defendants again argue that they need not allege every
detail of the alleged defamatory statements in the initial
pleadings.  Furthermore, in the absence of a date when the
defamation occurred, it cannot be determined whether the New
Jersey one year statute of limitations has been satisfied.

Plaintiffs argue that to the extent Defendants intend to premise their defamation claim upon the Plaintiffs' allegations that Defendants have permitted and promoted the sale of counterfeit and pirated recordings, they cannot do so. Defendants admit the truth of the factual basis for Plaintiff's claims in their Counterclaim, as well as in their Answer; Defendants admit that they know vendors at the Flea Market have been and continue to be engaged in sales of pirated and counterfeit recordings. See Answer ¶¶2, 37, 38, 39; Amended Counterclaim ¶5, 6, 7. This Court thus finds that Defendants' counterclaim for defamation should be dismissed at this time without prejudice and leave be granted to Defendants to amend.

        3.   Tortious Interference Claim

In order to allege a claim for tortious interference with business relations, Defendants must allege facts sufficient to establish that:

> (1) they had a continuing or prospective economic relationship or reasonable expectation of economic advantage; (2) [Plaintiffs] knew of such relationship of expectancy; (3) the interference and harm inflicted were done intentionally and with 'malice' in the sense of conduct that is wrongful and without justification or excuse; (4) if not for the interference, it was reasonably probable that [Defendants] would have realized its economic advantage; and (5) [Defendants were] injured as a result of [Plaintiffs'] conduct.

Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d 460, 493-94

13

(D.N.J. 1998)(citing <u>Printing Mart-Morristown</u>, <u>supra</u>, 116 N.J. at 751-52). "Malice" requires that the harm be inflicted intentionally, without justification or excuse. <u>Rainier's Dairies v. Raritan Valley Farms, Inc.</u>, 19 N.J. 552, 563 (1955).

Plaintiffs argue that Defendants' mere recitation of the bare elements of this claim, and their general allegations about unspecified harassment against unspecified vendors at unspecified times, fails to state a claim. Defendants acknowledge the sale of pirated and counterfeit goods at their market and that any actions taken by or on behalf of any of the Plaintiffs were taken in an effort to protect and enforce their copyrights. <u>Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.</u>, 912 F. Supp. 747, 774 (D.N.J. 1995)(interference claims dismissed where plaintiff "do[es] not particularize the contracts that plaintiff would have executed, nor do they explain the wrongful conduct, or even allege the existence of it" and "fails to assert the existence of an existing or potential contractual relation that, but for defendants' malicious interference would have been recognized").

Defendants again counter that they have provided all that is required by the notice pleading standard. Defendants argue that the facts set forth in their Counterclaim establish that the contractual relations the market has with its regular vendors has been interfered with by Plaintiffs in their sending

representatives through the market on a regular basis to harass and annoy law abiding vendors. Defendants state that they have set forth the contractual relationship that they have with their vendors and the circumstances upon which they believe Plaintiffs intentionally and maliciously sought to destroy that relationship.

This Court finds it proper to dismiss the Defendants' Counterclaim at this time without prejudice, subject to the right of Defendants to amend.

If Defendants, consistent with this Opinion, as discussed above, believe that their counterclaims for false light, defamation and/or tortious interference can be amended with sufficient factual and legal basis to state a claim, then such a second amended counterclaim shall be filed within thirty (30) days of today's date.

C.   <u>Motion to Strike Twenty-Three of Defendants' Defenses</u>

Motions to strike legally insufficient defenses "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." <u>U.S. v. Kramer</u>, 757 F. Supp. 397, 410 (D.N.J. 1991). Thus, where the insufficiency of a defense is "clearly apparent," the defense should be stricken. <u>Cipollone v. Liggett Group, Inc.</u>, 789 F. 2d 181, 188 (3d Cir. 1986). Plaintiffs contend that twenty-three of

the thirty-three separate defenses asserted by Defendants are
legally insufficient on their face.

At oral argument, the Court asked Plaintiffs if they were in
a position to elect a damages remedy under 17 U.S.C. § 504(a).
Plaintiffs advised the Court that they would notify all
interested parties of its election shortly thereafter.  By letter
dated June 4, 2003, Plaintiffs notified the Court that they were
electing to recover statutory damages, as provided under 17
U.S.C. § 504(c).  In response, Defendants waived a number of
their affirmative defenses, as noted below, on the condition that
should Plaintiffs change their mind with respect to their
election of the nature of damages at some time in the future,
Defendants be permitted to assert those defenses at that time as
appropriate.

    1.   <u>First Separate Defense: Non-Discriminatory Acts</u>

Plaintiffs contend that the defense that Defendants acted in
a non-discriminatory way is not available because they do not
allege discrimination in their Complaint.  Defendants respond
that their actions or decisions not to act – which Plaintiffs
contend constitute contributory and vicarious copyright
infringement – were at all times based on reasonable, legitimate,
and non-discriminatory factors.

Discrimination, Defendants' state of mind and the legitimacy
of Defendants' business motives, however, are not relevant to any

16

of the elements of secondary liability.  Constructive knowledge

of infringing activity is sufficient for contributory

infringement; actual knowledge is not required.  See <u>A&M Records,</u>

<u>Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1020 (9th Cir. 2001);

<u>Columbia Pictures Industries, Inc. v. Aveco, Inc.</u>, 800 F.2d 59

(3d Cir. 1986).  Vicarious liability, moreover, has no state of

mind requirement; the defendant need not be aware of the

infringing activity.  See <u>American Tel. and Tel. Co. v. Winback</u>

<u>and Conserve Program, Inc.</u>, 42 F.3d 1421, 1441 (3d Cir.

1994)(holding that one may be vicariously liable solely if he has

the right and ability to supervise the infringing activity and

also has a direct financial interest in such activities; nothing

more is required).  Thus, this Court will strike Defendants'

first separate defense.

> 2. <u>Fourth Separate Defense: Failure to Exhaust</u>
>    <u>Administrative Remedies</u>

Defendants argue that Plaintiffs must first exhaust any

available administrative remedies before filing suit in federal

court.  However, there is no administrative remedy available to

Plaintiffs.  Indeed, copyright law provides a direct private

right of action to obtain an injunction and recover damages for

infringement.  17 U.S.C. § 501.  Such actions are to be

initiated in federal district court, which have exclusive

jurisdiction.  28 U.S.C. § 1338.  The only pre-requisite to suit

in federal district court is that the work at issue be registered

with the Copyright Office.  17 U.S.C. § 411(a).  Therefore, this
Court finds it appropriate to strike Defendants' fourth separate
defense.

>              3.    Sixth and Seventh Separate Defenses: Lack of
>                    Negligence

Based on Plaintiffs' letter of June 4, 2004, electing to
pursue statutory damages in accordance with 17 U.S.C. § 504(c),
Defendants have withdrawn their sixth and seventh separate
defenses.

>              4.    Eighth Separate Defense: Damages Due to
>                    Plaintiffs' Own Conduct

Defendants argue that to the extent that Plaintiffs'
statutory damages are caused by Plaintiffs' own negligence,
recklessness, or illegal conduct, they should be estopped from
recovering for the same.  Since it cannot be determined at this
point that Plaintiffs caused none of their own harm, the Court
will permit this defense to survive Plaintiffs' motion to strike.

>              5.    Ninth Separate Defense: Damages Caused by Third
>                    Parties

Defendants argue that if Plaintiffs' copyright infringement
allegations are true, Plaintiffs' damages in this case are caused
by bootleggers, manufacturers of unlicensed CDs and cassettes,
and individuals and businesses who manufacture and distribute
copyrighted CDs without authority to do so, all of which
Defendants have no control or authority over.

This defense, however, is made without regard to the

established law of contributory and vicarious copyright infringement.  The negligence of third parties is no defense to these claims.  In fact, courts have held that copyright infringing defendants can not assert contribution claims against third-party who allegedly contributed to infringement; neither the Copyright Act nor federal common law recognize a copyright infringer's right to contribution.  See e.g., Lehman Brothers, Inc. v. Wu, 294 F. Supp. 2d 504 (S.D.N.Y. 2003).  Defendants' ninth separate defense will thus be struck.

      6.   Tenth Separate Defense: Liability and Governmental Immunity

    In response to Plaintiffs' position that the Flea Market has the responsibility to exercise control over the nature of the goods sold on its premises, Defendant Flea Market employed the local police force to patrol and search the premises and seize any unlicensed goods so that those vendors could be handled in accordance with the law.  Defendants argue that to the extent that those officers were the only persons with the legal authority to supervise and control the copyright infringement at the Flea Market, Defendants cannot be vicariously or contributory liable for the same.

    The presence or absence of law enforcement activity, however, does not absolve Defendants of potential civil copyright liability.  In UMG Recordings, Inc. v. Sinnott, 300 F. Supp. 2d 993, 999-1000 (E.D. Ca. 2004), for example, the court held that a

flea market could be contributorily liable despite a lack of law enforcement activity in seizing infringing CDs and cassettes. Contributory liability turns, in large part, on the knowledge that infringing activity is occurring on the premises, not whether or not law enforcement actually patrol and subsequently inform those in charge that vendors are, in fact, infringing Plaintiffs' copyrights.  Therefore, the Court finds it appropriate to strike Defendants' tenth separate defense.

       7.   <u>Eleventh Separate Defense: Damages Are "Speculative and Unenforceable"</u>

      Based on Plaintiffs' letter of June 4, 2004, electing to pursue statutory damages in accordance with 17 U.S.C. § 504(c), Defendants have withdrawn their eleventh separate defense.

       8.   <u>Twelfth Separate Defense: Absolute, Qualified Immunity And/Or Good Faith Immunity</u>

      Defendants withdrew this defense in their opposition to Plaintiffs' motion.

       9.   <u>Thirteenth Separate Defense: Denial of Liability</u>

    Plaintiffs argue that once Defendants' liability is established, Plaintiffs are entitled to the damages allowed by statute.  17 U.S.C. § 504(b), 505.  While this may very well be correct, Defendants are entitled to offer a blanket denial of their liability for any damages Plaintiffs may seek.  This Court will therefore allow this Defense to stand.

10.   Fifteenth Separate Defense: No Damages

Based on Plaintiffs' letter of June 4, 2004, electing to
pursue statutory damages in accordance with 17 U.S.C. § 504(c),
Defendants have withdrawn their fifteenth separate defense.

11.   Sixteenth Separate Defense: Corporate Immunity

Plaintiffs contend that Defendants' sixteenth defense should
be struck because the doctrine of corporate immunity is
irrelevant under copyright law.  An individual may be personally
liable for vicarious infringement if that person "has the right
and ability to supervise the infringing activity and also has a
direct financial interest in such activities."  Gershwin
Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d
1159, 1162 (2d Cir. 1971).  Also, an individual who might
otherwise be protected by the corporate veil may be liable for
contributory infringement if, with knowledge of the infringement,
he "induces, causes or materially contributes to the infringing
conduct of another."  Id. at 1162.  See Columbia Pictures
Industries, Inc. v. Aveco, Inc., 800 F.2d 59, 64 (3d Cir.
1986)(corporate officers who provide the site and facilities for
known infringing activity and ignored repeated requests to cease
and desist infringing activities held liable for contributory
liability).

Plaintiffs contend that the precise legal issues and fact
patterns in this case were presented in Fonovisa, Inc. v. Cherry

21

Auction, Inc., 76 F.3d 259 (9th Cir. 1996) and UMG Recordings, Inc. v. Sinnott, 300 F. Supp. 2d 993 (E.D. Ca. 2004), cases brought against the corporate and individual operators of swap meets and flea markets who rented space at their markets to vendors selling counterfeit and pirated recordings.  Both the Fonovisa and Sinnott courts determined that the operators of the market could be held liable on both of these claims because they controlled the premises, had knowledge of the infringing conduct, obtained direct financial benefit from the infringement and materially contributed to the infringing activities by providing space, utilities, parking, advertising, plumbing and customers. Fonovisa, 76 F.3d at 263-64; Sinnott, 300 F. Supp. 2d at 997-1002.

Defendants argue that Plaintiffs' position that the doctrine of corporate immunity is irrelevant in copyright law is flawed. Rather, Defendants contend that the doctrine is relevant here and absolves John Ackerman and Charles Pratt from liability.  The doctrine of corporate immunity, according to Defendants, protects shareholders in the vast majority of copyright actions and only in rare instances can vicarious liability and/or contributory liability actions be supported against shareholders.  At the time that the alleged copyright infringement took place, Charles Pratt and John Ackerman were stockholders and employees of a company that leased space to businesses or persons that allegedly engaged

in copyright infringement.  Defendants argue that Pratt and
Ackerman fought tirelessly as employees of their employer company
to enforce the company policy prohibiting tenants who were
recognized as copyright infringers from leasing space from the
company.  They had no control over any decision to copy
copyrighted material, to buy and resell copyrighted material, to
market copyrighted material, did not have control over the
business decisions of the individual copyrighters, and did not
receive any direct benefit from any copyright infringement.

      The doctrine upon which Defendants rely, however, in
asserting this defense to protect the interests of John Ackerman
and Charles Pratt is that of individual liability, not corporate
liability.  While both sides cite to <u>Playboy Enterprises, Inc. v.
Starware Pub. Corp.</u>, 900 F. Supp. 438 (S.D. Fla. 1995), to
support their respective positions, this Court finds Plaintiffs'
reading to be the better one.  In that case, the court held the
corporation president both personally liable based on vicarious
liability as well as based on personal involvement.  <u>Id.</u> at 441-
42.  Corporate immunity was never discussed by the court.  The
court looked only to the well-established two-part test for
finding vicarious liability: (1) the individual or corporate
officer must have had the ability to supervise the infringing
activity; and (2) that individual must have had a financial
interest in that activity.  <u>Id.</u> at 441.  Similarly, here, if

Ackerman or Pratt had knowledge of the infringing activities and materially contributed to them, or had the right and ability to supervise or control the infringing activities but failed to do so while profiting from them, then they may be individually liable regardless of their corporate affiliation.  The corporation and their role within, alone, does nothing to shield them from liability.

Notably, both the Sinnott and Fonovisa courts also rejected defenses to the contributory infringement claim which are nearly identical to those offered by Defendants here.  In Sinnott, the court found that the owner and operator of the flea market could not avoid liability for contributory infringement by claiming, as do Defendants here, that he did not have personal knowledge of the infringement by vendors in his market, where he admittedly had received personal notification of his vendors' direct infringement from the RIAA as well as from law enforcement. Sinnott, 300 F. Supp. 2d at 999.  Similarly, the Fonovisa court ruled that the defendants could be liable for contributory infringement because of their knowledge of, and contributions to, ongoing infringing activities.  The Fonovisa court concluded that defendants were aware their vendors were selling counterfeit recordings because there had been a law enforcement raid and seizure of the counterfeit goods, and because the defendants had received written notice of infringing activities, and concluded

24

that "providing the site and facilities for known infringing activity is sufficient to establish contributory liability." Fonovisa, Inc., 76 F.3d at 264.

For the same reasons, the owners and operators of the Flea Market in this case are proper defendants and Defendants' defense of corporate immunity should be struck.

> 12. Eighteenth, Nineteenth, and Twentieth Separate Defenses: No Legal Duty to Provide Police Investigations

Defendants argue that these defenses are appropriate, as they address Plaintiffs' position that Defendants have authority and control over the individual vendors at the Flea Market. Defendants believe that Plaintiffs seek to have them patrol the market grounds, perform searches of vendor spaces suspected of selling unlicensed copyright goods, and, as appropriate, seize the illegal merchandise.  Defendants contend that although Plaintiffs have suggested that the Flea Market staff should be trained and subsequently should police its grounds, only state or local police have the authority and control to conduct searches and seizures in accordance with the law.  Since the power to control the alleged copyright infringers in the manner that Plaintiffs propose is exclusively a police power and Defendants are unable to comply with Plaintiffs' instructions, Defendants argue, these defenses are appropriate.

As Plaintiffs point out, however, Defendants' potential

liability in this suit is based upon their contribution to infringing activities and failure to exercise control over their vendors on their premises.  Plaintiffs allege only that, as an element of vicarious liability, Defendants have the ability to supervise or control infringing conduct on their premises.  As a landlord's control over his business tenants does not depend on any police power, these defenses must be struck.

        13.  <u>Twenty-First Separate Defense: Duty to Provide
Services or Compensation to Regulate Infringement
Activities</u>

Defendants raise this defense, contending that Plaintiffs have available to them the technology to prevent CDs and cassettes from being copied, the skill and expertise to identify unlicensed works, and the manpower and financing to control the sale of unlicensed recordings; Defendants do not.  To the extent that Plaintiffs have the ability to stop copyright infringement and have shifted that burden to Defendants with the full knowledge that Defendants lack those resources, Defendants contend Plaintiffs are contributing to the problem and should be estopped from recovering for Defendants' failure to manage something outside their control.

Under copyright law, however, Plaintiffs have no duty to provide services or compensation to regulate the sale of improper recordings.  Contributory negligence is not a defense to the claims asserted against Defendants.  Indeed, the fact that

technology may be available to prevent illegal activity does not, in the absence of employment thereof, make the activity defensible or legal.  Moreover, while Defendants argue that they, unlike Plaintiffs, lack the training or knowledge required to distinguish counterfeit CDs and cassettes from legitimate recordings, the Court finds this unpersuasive.  <u>See</u> <u>UMG Recordings, Inc. v. Sinnott</u>, 300 F. Supp. 2d 993, 1001-02 (E.D. Cal. 2004)(finding the same argument to be "so devoid of any merit that, quite frankly, it offend[ed] the Court.").  It is difficult to understand how checking the vendors that sell recorded music for counterfeit merchandise is more burdensome than checking for other prohibited goods such as firearms.  Nor have Defendants offered anything to show how an outright ban or prohibition on such items' sale on the premises would not solve the problem.  Thus, Defendants' twenty-first defense will be struck.

        14.  <u>Twenty-Third Separate Defense: Lack of Privity</u>

Defendants withdrew this defense in their opposition to Plaintiffs' motion.

        15.  <u>Twenty-Fourth Separate Defense: Failure to Mitigate</u>

Based on Plaintiffs' letter of June 4, 2004, electing to pursue statutory damages in accordance with 17 U.S.C. § 504(c), Defendants have withdrawn their twenty-fourth separate defense.

      16.   <u>Twenty-Fifth Separate Defense: First Sale Doctrine</u>

The First Sale doctrine, codified at 17 U.S.C. § 109, provides that "the owner of a . . . phonorecord lawfully made under this title . . . is entitled, without the authority of the copyright owner to sell or otherwise dispose of the possession of that . . . phonorecord." 17 U.S.C. § 109(a).  Defendants correctly contend that in order to find Defendants liable for vicarious or contributory copyright infringement, they must first prove that copyright infringement has in fact occurred.  Although Plaintiffs may lose money by the second hand sales of properly licensed CDs and cassettes sold in flea markets, this is nonetheless legal.  The First Sales doctrine is applicable in that Defendants cannot vicariously or contributorily infringe on Plaintiffs' copyrights if there is no first hand copyright infringement occurring on the premises.  This doctrine is only applicable, however, insofar as the CDs and cassettes seized were lawfully made.  This suit involves secondary liability for the sale of infringing recordings, however.  Such recordings are not lawfully made, and the first sale doctrine has no applicability. 17 U.S.C. § 109.  Thus, Defendants' twenty-fifth separate defense will be struck.

      17.   <u>Twenty-Sixth Separate Defense: Fair Use Doctrine</u>

The Fair Use Doctrine protects one from liability for copyright infringement for reproducing a copyrighted work "for

purposes such as criticism, comment news report, teaching . . .
scholarship or research . . . ." 17 U.S.C. § 107. Plaintiffs'
allegations concern the reproduction and sale of pirated and
counterfeit copyrighted works at the Flea Market, thus rendering
Fair Use inapplicable. This Court will therefore strike
Defendants' twenty-seventh separate defense.

      18. <u>Twenty-Seventh Separate Defense: *De Minimis*
           Violation</u>

      Defendants assert that this defense is proper since to the
extent that some underlying copyright infringements here may be
deemed to be *de minimis*, they cannot be held vicariously or
contributorily liable for those forms of violation. "To
establish that a copyright infringement is *de minimis*, the
alleged infringer must demonstrate that the copying of the
protected material is so trivial 'as to fall below the
quantitative threshold of substantial similarity, which is always
a required element of actionable copying.'" <u>Gordon v. Nextel
Communications and Mullen Advertising, Inc.</u>, 345 F.3d 922, 924
(6th Cir. 2003)(citing <u>Ringgold v. Black Entertainment
Television, Inc.</u>, 126 F.3d 70, 74 (2d Cir. 1997). Only upon a
showing of actual copyright infringement, can secondary liability
attach; "there can be no secondary liability absent primary
infringement." <u>Id.</u> at 926. Though Plaintiffs argue that the
violations are not *de minimis*, but rather copies of entire works,
future discovery may show differently. This Court will therefore

permit Defendants to assert this defense at this time.

      19.  <u>Thirty-Second Separate Defense: Damages Caused by
Online Music Sharing</u>

Defendants withdrew this defense in their opposition to
Plaintiffs' motion.

      20.  <u>Thirty-Third Separate Defense: No Financial
Benefit</u>

Plaintiffs argue that this defense is superfluous, for it
merely denies an element of Plaintiffs' vicarious liability
claim; that is, financial benefit is an element of a vicarious
liability claim, not an affirmative defense.

Defendants deny, however, receiving a financial benefit from
any alleged infringing activity occurring at the Flea Market.  In
fact, Defendants contend that the resources spent in policing the
grounds and attempting to enforce copyright laws far outweigh any
financial benefit that might be reaped from allowing infringing
vendors to sell their goods on the premises.  The Court finds
this to be a plausible factual basis for raising this defense and
will therefore permit Defendants' thirty-third defense to survive
Plaintiffs' motion to strike.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion to dismiss the amended counterclaim will be granted without prejudice and Defendants will be granted leave to amend again within 30 days.  In addition, Plaintiffs' motion to strike certain separate defenses will be granted with respect to the following numbered defenses: first, fourth, ninth, tenth, sixteenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-fifth, and twenty-sixth.  Defendants have voluntarily withdrawn numbered defenses six, seven, eleven, twelve, fifteen, twenty-three, twenty-four, and thirty-two.  Defendants' eighth, thirteenth, twenty-seventh, and thirty-third defenses shall survive Plaintiffs' motion to strike.


**July 12, 2004**                            **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                             United States District Judge