THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARISTA RECORDS, INC., ATLANTIC RECORDING CORPORATION, BMG MUSIC, CAPITOL RECORDS, INC., ELEKTRA ENTERTAINMENT GROUP, INC., FONVISA, INC., INTERSCOPE RECORDS, MOTOWN RECORD COMPANY, L.P., PRIORITY RECORDS LLC, SONY MUSIC ENTERTAINMENT, INC., UMG RECORDINGS, INC., VIRGIN RECORDS OF AMERICA, INC., WARNER BROS. RECORDS INC. AND ZOMBA RECORDING CORPORATION, | HON. JEROME B. SIMANDLE |
| | Civil Action No. 03-2670 (JBS) |
| Plaintiffs, | |
| v. | **OPINION** |
| FLEA WORLD, INC., a Pennsylvania corporation, d/b/a Columbus Farmers Market; FLEA WORLD LLC, a New Jersey Corporation, d/b/a Columbus Farmers Market; COLUMBUS FARMERS MARKET LLC, a New Jersey Corporation, d/b/a Columbus Farmers Market; JOHN ACKERMAN, an individual; CHARLES PRATT, an individual; and DOES 1 through 20, | |
| Defendants. | |

APPEARANCES:

Karen A. Confoy, Esq.
STERNS & WEINROTH, P.C.
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, NJ 08607-1298
        and

Russell J. Frackman, Esq.
Jeffrey D. Goldman, Esq.
Eric J. German, Esq.
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
    and
Michael J. Huppe, Esq.
Karyn A. Temple, Esq.
RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC.
1330 Connecticut Avenue N.W., Suite 300
Washington, D.C. 20036-1725
    Attorneys for Plaintiffs


Matthew R. McCrink, Esq.
McCRINK, NELSON & KEHLER
475 Route 73 North
West Berlin, NJ 08091
    Attorney for Individual Defendants John Ackerman and Charles
    Pratt
    and
Ryan W. O'Donnell, Esq.
VOLPE AND KOENIG, P.C.
United Plaza, Suite 1600
30 S. 17th Street
Philadelphia, PA 19103
    Attorney for Defendant Columbus Farmers Market, LLC
    and
Michael N. Onufrak, Esq.
Thomas A. Warnock, Esq.
WHITE AND WILLIAMS, LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
    Attorneys for Defendants Flea World, Inc. and Flea World LLC

**SIMANDLE**, District Judge:

This matter comes before the Court upon Defendants Flea

World, Inc., Flea World LLC, Columbus Farmers Market LLC, John

Ackerman and Charles Pratt's (referred to collectively

hereinafter as "Columbus Farmer's Market") motion for

reconsideration of this Court's July 12, 2004 Opinion and Order

pursuant to L. Civ. R. 7.1(g).  Also before the Court are

2

Defendants' joint motion for leave to file its Second Amended Answers and Plaintiffs' motion to dismiss Defendants' Second Amended counterclaims and to strike certain defenses.

For the reasons discussed herein, this Court denies Defendants' motion for reconsideration.  As to Defendants' motion for leave to file Second Amended Answers, that motion is granted in part and denied in part, consistent with the directions of this Opinion.  Finally, the Court grants Plaintiffs' motion to dismiss Defendants' Second Amended Counterclaims and to strike the thirteenth, twentieth, and twenty-eighth separate defenses, and denies same with respect to the nineteenth separate defense.

## I.   BACKGROUND

Plaintiffs are fourteen member companies of the Recording Industry Association of America ("RIAA").  The RIAA is a not-for-profit trade association whose member companies create, manufacture and/or distribute approximately 90 per cent of all legitimate sound recordings sold in the United States.  The Defendants are Flea World, Inc., Flea World LLC, Columbus Farmers Market LLC, John Ackerman and Charles Pratt.

Plaintiffs filed their Complaint on June 3, 2003, alleging that Defendants ignored repeated demands from the RIAA to curtail the sale of pirated and counterfeit compact discs ("CDs") and cassette tapes ("cassettes") at the Farmers Market.  Plaintiffs asserted claims for contributory and vicarious copyright

infringement.  On October 1, 2003, Plaintiffs filed an Amended
Complaint identifying over 7,500 pirated recordings that had been
sold at the Market.

Defendants filed their Answer, Separate Defenses and
Counterclaim on October 29, 2003, admitting that they provided
space and facilities to vendors who have sold and continue to
sell pirated and counterfeit CDs and cassettes.  Plaintiffs filed
a motion to dismiss the Counterclaim and to strike eighteen of
the asserted defenses.  After the motion was fully brief and
submitted to this court, Defendants filed their Amended Answer
and Counterclaim.  The Answer itself was not amended, but
Defendants asserted nine new defenses and amended their
Counterclaim to plead in three separate counts that Plaintiffs
are liable under claims of false light, defamation and tortious
interference.  Plaintiffs moved to dismiss the Amended
Counterclaim and to strike twenty-three defenses.

This Court's July 12, 2004 Order dismissed Defendants'
amended counterclaims without prejudice and granted Plaintiffs'
motion to strike Columbus Farmers Market's first, fourth, ninth,
tenth, sixteenth, eighteenth, nineteenth, twentieth, twenty-
first, twenty-fifth and twenty-sixth affirmative defenses.
Columbus Farmers Market now seeks reconsideration of this Court's
Order to the extent that it granted Plaintiff's motion to strike

Columbus Farmers Market's ninth, sixteenth, eighteenth, nineteenth, twentieth, and twenty-fifth affirmative defenses.

On the heels of its substitution of counsel, Defendants also seek leave to file their Second Amended Answers.  Plaintiffs have moved to dismiss Defendants' Second Amended Counterclaims and to strike certain defenses.

## II. __DISCUSSION__

A.   Defendants' Motion for Reconsideration

_____1.   Standard of Review

_____Local Civil Rule 7.1(g) of the United States District Court, District of New Jersey, governs the instant motion for reconsideration.  The rule requires that the moving party set forth the factual matters or controlling legal authority that it believes this Court overlooked when rendering its initial decision.  L. Civ. R. 7.1(g).  Whether to grant reconsideration is a matter within the district court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked.  DeLong Corp. v. Raymond Int'l, Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981); Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993).  The purpose of a motion for reconsideration "is to correct manifest errors of law or to present newly discovered evidence."  Harsco Corp. v. Zlotnick, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476

U.S. 1171 (1986).  A motion for reconsideration is improper when it is used solely to ask the court to rethink what it has already thought through – rightly or wrongly.  Oritani Savings & Loan Assoc. v. Fidelity & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990)(citing Above the Belt v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)), rev'd on other grounds, 989 F.2d 635 (3d Cir. 1993).  Nor is reconsideration warranted when the moving party simply recapitulates the cases and arguments considered by the court prior to rendering its initial decision. Carteret Sav. Bank v. Shushan, 721 F. Supp. 705, 706-07 (D.N.J. 1989).  Here, Defendants Columbus Farmers Market seek reconsideration of this Court's prior determination that its ninth, sixteenth, eighteenth, nineteenth, twentieth, and twenty-fifth affirmative defenses should be struck.  The motion consists largely of arguments that the Court heard, considered and adjudicated, thereby rendering the instant motion an improper one under the standard articulated above.  Nevertheless, those arguments are now briefly addressed again.

    2.   <u>Ninth Affirmative Defense: Damages Caused by Third Parties</u>

Columbus Farmers Market's ninth affirmative defense states, "[t]he incident(s) and alleged damages mentioned in the Complaint were due to the negligence or other wrongdoing of a third person or persons over whom these parties exercised no control and for whose acts these parties are not responsible."  (Amended Answer

6

at 14-15.)  In originally striking this defense, this Court
stated:

> This defense, however, is made without regard
> to the established law of contributory and
> vicarious copyright infringement.  The
> negligence of third parties is no defenses to
> these claims.  In fact, courts have held that
> copyright infringing defendants can not
> assert contribution in claims against third
> parties who allegedly contribute to
> infringement; neither the Copyright act nor
> federal common law recognize a copyright
> infringer's right to contribution.  See e.g.,
> Lehman Brothers, Inc. v. Wu, 294 F. Supp. 2d
> 504 (S.D.N.Y. 2003).

(July 12, 2004 Opinion at 18-19.)  Columbus Farmers Market argues
that this defense was improperly struck, because it seeks not to
establish the "negligence of third parties" nor a claim for
contribution, but rather to establish that any damage to
Plaintiffs was the result of the actions of third parties, all of
whom Columbus Farmers Market has no knowledge of, authority or
control over.  This argument essentially repeats that which
Defendants made in briefing the initial motion (again, without
any citation to law) and which this Court rejected.

Third party direct liability is one of the elements of an
allegation of secondary liability.  A&M Records, Inc. v. Napster,
Inc., 239 F.3d 1004, 1013 n.2 (9th Cir. 2001); Metro-Goldwyn-
Mayer Studios, Inc. v. Grokster, Ltd., 259 F. Supp. 2d 1029, 1034
(C.D. Cal. 2003).  Thus, every case of contributory or vicarious
liability necessarily involves the defendant being held to answer

for the direct conduct of another.  Moreover, Plaintiffs allege
that Defendants are legally responsible for the infringement of
these third parties (i.e. the vendors) because they had knowledge
of and materially contributed to the third party's infringing
activity (contributory infringement), or had the ability to
supervise and control it and financially benefitted from it
(vicarious liability).  Plaintiffs need not sue the numerous
third party direct infringers in order to bring this cause of
action against Defendants.  In re Aimster Copyright Litigation,
334 F.3d 643, 646 (7th Cir. 2003).  In addition, Defendants may
not seek contribution from those third party direct infringers.
Lehman Brothers, Inc. v. Wu, 294 F. Supp. 2d 504, 505 (S.D.N.Y.
2003).

Defendants cite to the Digital Millennium Copyright Act
("DMCA"), 17 U.S.C. § 512, and assert that they are "similar to
being in the position of an internet service provider (ISP) for
which the Copyright Act specifically carved out safe-harbor
provisions from liability."  (Defs.' Brief at 10.)  While
Defendants are admittedly not ISPs, nor does this case in any way
deal with internet services, they argue that they perform a
function very similar to an ISP and thus, their liability should
be judged with a similar yardstick.  This Court finds this
argument unpersuasive; Defendants have cited to, and this Court
has found, no case suggesting that such an analogy is

8

appropriate.  The public policy creating a safe harbor for ISPs
is informed by considerations of lack of ISP control and
knowledge of the millions of items of data flowing daily through
the providers facilities; these considerations are absent in this
matter's lessor/lessee relationships arising from the rental of
real market space to vendors on Defendants' premises.  For these
reasons, Defendants' ninth affirmative defense will remain
stricken.

     3.   <u>Sixteenth Affirmative Defense: Corporate Immunity</u>

     Columbus Farmers Market's sixteenth affirmative defense
states "[t]he claim served against Charles Pratt and John
Ackerman, individually, is improper as both are protected by the
Doctrine of Corporate/Company Immunity."  (Amended Answer at 15.)
Defendants argument for reconsideration on this point is merely a
recapitulation of that which was previously argued and rejected
by this Court.  The defense of corporate immunity comes into play
when a plaintiff sues corporate officers or directors for the
acts or failures to act of the corporation.  Here, however,
Plaintiffs appear to be suing Defendants Ackerman and Pratt for
their individual acts or omissions, and not derivatively based on
their employment by or relationship to any corporation.
Plaintiffs' allege that Ackerman and Pratt personally had actual
or constructive knowledge of – and materially contributed to –
infringement, that they personally had the ability to supervise

or control that infringement, and that their failure to do so resulted in personal financial benefit.  <u>See</u> <u>Columbia Pictures Industries, Inc. v. Redd Horne, Inc.</u>, 749 F.2d 154, 160 (3d Cir. 1984)("An officer or director of a corporation who knowingly participates in the infringement can be held personally liable, jointly and severally, with the corporate defendant.") Based on this, Defendants' sixteenth affirmative defense was properly struck.

      4.   <u>Eighteenth, Nineteenth, and Twentieth Affirmative Defenses: No Legal Duty to Provide Police Investigations</u>

As Defendants describe them, the eighteenth, nineteenth, and twentieth affirmative defenses "seek to limit both the expansion of the duty on businesses in policing others' copyrights, and to defeat the strict liability standard demanded by the Plaintiffs." (Defs.' Brief at 14.)  Though Defendants raise arguments now that were not made earlier, and thus need not be considered on a motion for reconsideration, this Court will nevertheless discuss each below, for the sake of hastening the ultimate resolution of these issues.

First, Defendants argue that Plaintiffs have an affirmative duty to police infringing activity on their own and are obligated not to sleep on their rights.  This argument relates only to the defense of laches, which Plaintiffs did not move to strike.  Even the case cited by Defendants on this point, <u>Kepner-Tregoe, Inc.</u>

v. Executive Dev., Inc., 79 F. Supp. 2d 474 (D.N.J. 1999),
implicates only the defense of laches and is therefore silent as
to the defenses at issue.

Moreover, Defendants seek to make this case about
Plaintiffs' alleged attempts to "choke off every possible avenue
of second-hand sales" (Defs.' Brief at 15-16) and "to stop all
sales of CDs."  (Defs.' Reply at 9.)  As this Court understands
it, Plaintiffs' Complaint involves the sale of pirated and
counterfeit recordings, not that of any used, legitimate CDs on
Defendants' premises.

Next, Defendants seek to analogize the current situation to
other previous attempts by copyright owners to impose a duty on a
third party; specifically, Defendants draw upon the attempt of
copyright owners to hold internet service providers liable for
the acts of their customers.  In response to this situation,
Congress enacted the Digital Millennium Copyright Act ("DMCA"),
which includes a safe harbor provision, 17 U.S.C. § 512(c)(3),
that provides notice of the alleged copyright infringement to
those third parties.  Only if the third party fails to act on the
alleged copyright infringement after such notification may the
third party be held liable.  Defendants assert that "the same
public policy underlying Congress' passage of the DMCA applies
equally to Columbus Farmers Market's business." (Defs.' Brief at
17.)  As discussed above at pp. 8-9 of this Opinion, and putting

aside the admitted difference that Defendants do not have the
status of being a "service provider" as that term is defined in
the Act, Defendants' argument that the same public policy is
applicable here is flawed.  Congress decided to pass a special
set of rules for ISPs, electing not to apply those rules to other
types of entities.  It is not the role of this Court to extend
Congress's specific intent with analogies as those offered by
Defendants.  See Dastar Corp. v. Twentieth Century Fox Film
Corp., 539 U.S. 23, 34-35 (2003)("When Congress has wishes to
create . . . an addition to the law of copyright, it has done so
with . . . specificity" and in a "carefully limited and focused"
way.)  Thus, this Court refuses to alter its prior Order with
respect to Defendants' eighteenth, nineteenth, and twentieth
affirmative defenses.

     5.   Twenty-Fifth Affirmative Defense: First Sale Doctrine

     Defendants argue that this Court improperly struck the
twenty-fifth affirmative defense because there is no evidence
that all of Plaintiffs' complaints of alleged infringement relate
to illegal musical recordings and, by striking this defense, the
Court denies Defendants the right to hold the Plaintiffs to the
requisite burden of proof.  However, Plaintiffs have consistently
assured this Court, and do so again in this present motion, that
this case has nothing to do with the re-sale of legitimate
recordings.  Further undermining Defendants' objection is the

fact that the illegitimacy of the recordings sold is an element of proving direct infringement.  If the recordings are legitimate, there can be no direct infringement nor secondary liability.  Plaintiffs will be required to prove that the "particular copy or phonorecord" sold or offered for sale on Defendants' premises was not an authorized copy of one of Plaintiffs' works.  As such it was not "lawfully made" and is not covered by the first sale doctrine.  See 17 U.S.C. § 109(a). While it is clear that Plaintiffs have not yet proven infringement, it is equally clear that the basis of Plaintiffs' suit is not any recording to which the first sale doctrine would be applicable.  Thus, this Court rejects Defendants' invitation to reconsider its previous determination on the twenty-fifth affirmative defense.

B.   Defendants' Motion for Leave to File Second Amended Answers

Though this Court's July 12, 2004 Opinion and Order was silent as to the amendment of Defendants' answers, Defendants now seek leave to amend in order to cure what they deem to be defects in the previously filed pleading.  Defendants' proposed amendments fall into two categories: (1) amendments to Defendants' prior responses to the numbered paragraphs of Plaintiffs' Complaint; and (2) amendments to Defendants' articulated separate defenses.

13

1.   <u>Legal Standard for Amendment</u>

Leave to amend should be "freely given when justice so requires."  Fed R. Civ. P. 15(a).  The Third Circuit has expressed a preference for liberally allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities.  <u>See</u> <u>Bechtel v. Robinson</u>, 886 F.2d 644, 652 (3d Cir. 1989)); <u>Bair v. City of Atlantic City</u>, 100 F. Supp. 2d 262, 265 (D.N.J. 2000)(citing <u>Dole v. Arco Chemical Co.</u>, 921 F.2d 484, 487 (3d Cir. 1990)).  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1434 (3d Cir. 1997); <u>see</u> <u>also</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  The same standard applies to motions for leave to amend both complaints and answers.  <u>See</u> <u>Oneida Indian Nation of New York v. City of Sherrill, New York</u>, 337 F.3d 139, 168 (2d Cir. 2003).

Amendment under Rule 15(a) is thus not automatic.  Courts have the discretion to deny an amendment or to impose reasonable conditions upon amendment to ameliorate undue prejudice to the adverse party.  <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330-31 (1971) (holding that where movant does not claim that its prior answer was product of mistake, oversight or having been misled, trial court may properly consider denying

14

leave to amend defenses).  While the most common condition imposed upon an amending party is costs, see 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1486 (and cases cited therein), the imposition of conditions upon leave to amend an answer has been recognized where a defendant seeks to withdraw a damaging judicial admission, see Armstrong Cork Co. v. Patterson-Sargent Co., 10 F.R.D. 534, 535 (N.D. Ohio 1950). Typically, a plaintiff will not be prejudiced, in this sense, by permitting a defendant to cure an insufficient defense or to amplify a defense that has been stated in the answer.  6 Wright, Miller & Kane, supra, § 1487 at pp. 629-30 (and cases cited therein).

With these principles in mind, this Court turns to consider the circumstances giving rise to Defendants' motion to amend their Second Amended Answer herein.

2.   Amendment to Defendants' Responses to Numbered Paragraphs of Plaintiffs' Complaint

Plaintiffs argue that leave to amend should be denied because the proposals are not mere technical amendments nor are they narrowly tailored to correct prior pleadings.  Instead, Plaintiffs assert that Defendants seek to reconstruct Defendants' Amended Answer, effectively re-commencing this litigation. Defendants, in response, argue that the proposed amendments provide this Court with a more concise pleading by removing

extraneous commentary found in some of the paragraphs of previous answers and focusing on the issues in this case.

Moreover, Defendants' articulated main reason for seeking leave to amend is that "new counsel" wishes to cure "certain defects" in the Amended Answer and add "new information and defenses discovered by new counsel." (Defs.' Brief at 2-3.) That some Defendants have hired new counsel, however, is generally not a valid reason for amendment. <u>Villa v. City of Chicago</u>, 924 F.2d 629, 632 (7th Cir. 1991)(denial of leave to amend was appropriate where "no new facts or changes in the law warranted the filing of an amended complaint, other than the fact that Villa was represented by a new attorney"); <u>Rhodes v. Amarillo Hospital District</u>, 654 F.2d 1148, 1154 (5th Cir. 1981)("[t]he retention of a new attorney able to perceive or draft different or more creative claims from the same set of facts" is not a legitimate basis for amendment of a pleading). Here, however, unlike in the cases cited by Plaintiffs, new counsel was not obtained on the eve of trial, nor do Defendants seek leave to amend several years after the original pleading was filed and discovery long ended. Thus, the prejudice to Plaintiffs from granting Defendants leave to file such an amendment must be assessed only in terms of what has occurred so far in this case, such as reliance by the Court and by the opposing party.

16

What is most striking to this Court is Defendants' omission of statements made in Defendants' prior answer in responding to the numbered paragraphs of Plaintiffs' Complaint.  Many of the statements made, and now deleted, were relied upon by Plaintiffs and this Court in the prior round of motions.  (See July 12, 2004 Opinion.)  As Plaintiffs aptly note, Defendants' Second Amended Answer seeks to reconstruct that pleading from the ground floor up, sometimes replacing existing admissions, or partial admissions, with directly contradictory denials or omission of significant detail.

The Defendants do not demonstrate that the answers they seek to amend were the product of prior counsel's mistake or neglect; new counsel instead seek to "remov[e] the extraneous commentary from the Second Amended Answers" (Defs.' Reply Br. at 2), and to provide "a more concise pleading" consistent with the requirement of Rule 8(e)(1), Fed. R. Civ. P., for averments in pleadings that are "simple, concise, and direct."  (Id. at 3.)

Although this Court refuses to parse, line by line, the substance of the statements made previously and now omitted, it notes the substantial difference between the two versions of Defendants' Answers.  The explanatory statements in the earlier First Amended Answer are not surplusage, as Defendants now assert, but instead are qualifying statements that are a proper form of explanation of a partial denial under Rule 8(b), Fed. R.

17

Civ. P.[1]  As a matter of evidence, Defendants' prior statements, as expressed in the First Amended Answer and upon which Plaintiffs had every reason to rely, are clearly admissible under Rule 801(d)(2), Fed. R. Evid., as statements made "in either an individual or a representative capacity" and offered against that party.  Such admissions are a vital part of narrowing the issues

---

[1]Rule 8(b), Fed. R. Civ. P., provides:

> A party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies.  If a party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial.  Denials shall fairly meet the substance of the averments denied.  When a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, the pleader may make denials as specific denials of designated averments or paragraphs or may generally deny all the averments except such designated averments or paragraphs as the pleader expressly admits; but, when the pleader does so intend to controvert all its averments, including averments of the grounds upon which the court's jurisdiction depends, the pleader may do so by general denial subject to the obligations set forth in Rule 11.

Under this procedural rule, it is not uncommon for counsel to provide an explanation of the extent to which an averment of the Complaint is admitted or denied in the Answer, since the answering party "shall specify so much of it [the averment] as is true and material and shall deny only the remainder."  Id.

in a complex case.  Where the motion to amend does not demonstrate that the prior answers were the product of mistake, typographical error, or neglect, leave to retract that which was admitted, following dispositive motion practice, may be prejudicial to the opposing party, as it is in this case, by forcing Plaintiffs to prove facts that were previously admitted. As such, this Court will permit limited amendment of Defendants' responses to the numbered paragraphs of Plaintiffs' Complaint.[2] Absent justification other than the tactics of new counsel or the desire to streamline the pleadings, however, this Court will not allow such amendment to supercede and replace the original answers in so far as Defendants' new responses contradict or totally omit admissions of fact offered in those prior statements.[3]  <u>The amended answer must therefore also set forth verbatim those prior admissions</u>.  In such instances of conflict, the Court deems Defendants' former responses to be controlling as statements of a party-opponent.  If, in the future, Defendants are able to demonstrate that their prior counsel's admissions were in fact erroneous, leave to amend discrete admissions may be sought.

---

[2] <u>See</u>, <u>e.g.</u>, Defendants' Amended Answer, ¶ 34; Columbus Farmers Market LLC's Second Amended Answer ¶ 34; Flea World, Inc. and Flea World LLC's Second Amended Answer ¶ 34.

[3] <u>See</u>, <u>e.g.</u>, Defendants' Amended Answer, ¶¶ 37-39; Columbus Farmers Market LLC's Second Amended Answer, ¶¶ 37-39; Flea World, Inc. and Flea World LLC's Second Amended Answer, ¶¶ 37-39.

3.   <u>Amendment of Defendants' Affirmative Defenses</u>

In addition to seeking to amend its responses to the numbered paragraphs of Plaintiffs' Complaint, Defendants also seek to offer amended affirmative defenses.

First, Defendants propose three defenses which were previously struck by this Court: (1) the first sale doctrine; (2) the fair use doctrine; and (3) failure to mitigate damages.  With respect to the first sale and fair use doctrines, Defendants argue that these defenses are appropriate given Plaintiffs' alleged concession that they seized lawfully made or non-infringing CDs and cassettes.  (See Defs.' Ex. B, August 6, 2004 letter of Karen Confoy.)  Defendants find this concession in Plaintiffs' proposed testing protocol for obtaining an accurate measure of the number of direct infringements at issue and continue to argue that these amended defenses are proposed "to the extent that the CDs or cassettes seized were lawfully made or used."  Plaintiffs' letter to Defendants, however, proposes that a representative sample of the recordings listed on Schedule A to the Amended Complaint be tested using a standard method known as "A:B testing" to determine the percentage of recordings that duplicate the exact sounds on Plaintiffs' legitimate recordings.  Such testing, Plaintiffs inform this Court, does not determine whether a recording that duplicates such exact sounds is or is not a used or second-hand legitimate CD.  Thus, Plaintiffs'

letter seemingly bears no relation to Defendants' proffered
"first sale" defense.  Moreover, assuming that the testing
protocol reveals a number of lawfully made CDs or cassettes that
were nevertheless seized by Plaintiffs, those recordings would
not be employed against Defendants in suit for vicarious or
contributory infringement.  It is only the number of recordings
deemed to be infringing for which Plaintiffs would be seeking
damages, thereby rendering these doctrines, as previously
explained in this Court's July 12, 2004 Opinion, wholly
inapplicable to the remaining "percentage of each category
(counterfeit and pirate) of . . . works that will be deemed to be
infringing for the purposes of this litigation."  (Defs.' Ex. B,
08/06/04 Confoy Letter at 2.)

     With respect to failure to mitigate damages, this defense
was previously waived by Defendants upon Plaintiffs'
representation that they would be seeking damages under 17 U.S.C.
§ 504(c).  Indeed, in its July 12, 2004 Opinion and Order, this
Court memorialized its understanding that "based on Plaintiffs'
letter of June 4, 2004, electing to pursue statutory damages,"
Defendants withdrew this defense.  (July 12, 2004 Opinion at 27.)
Defendants now point to this very letter, arguing that amendment
is appropriate given Plaintiffs' preservation of its right to
elect another method of damages at a future point in the
litigation.  (See Defs.' Ex. C, June 4, 2004 letter of Karen

21

Confoy)("Plaintiffs' election is without prejudice to Plaintiffs'
right to change that election if they determine it is in their
interest to pursue actual damages and profits."). To date, this
Court is not aware that Plaintiffs' seek anything other than
statutory damages pursuant to 17 U.S.C. § 504(c), and Plaintiffs
are limited by the terms of their June 4, 2004 election upon
which this Court has relied. Until such time as Plaintiffs
obtain leave to elect another measure of damages in this case,
the Court continues to find this defense inapplicable.

Next, Defendants offer three new defenses to be included via
amendment: (1) chilling effect; (2) no liability as landlord; and
(3) the "safe harbor" provisions of the Digital Millennium
Copyright Act. Defendants' chilling effect defense states:
"Plaintiff's [sic] actions have a chilling effect on the sale of
legitimate copyrighted products, contrary to the intent of the
copyright statute and public policy." (Defendants Flea World,
Inc. and Flea World LLC's proposed thirteenth separate defense.)
Defendants argue that while it is clear that the First Amendment
does not shield copyright infringement, the chilling effect
implicated here is different; according to Defendants,
Plaintiffs' tactics and litigation strategy, if left unchecked,
will have a chilling effect on the sale of legitimate CDs and
cassettes. Copyright law, however, recognizes no "chilling
effect doctrine". See In re Capital Cities/ABC, Inc., 918 F.2d

22

140, 143 (11th Cir. 1990).  Moreover, any assertion of a chilling
effect from Plaintiffs' tactics employed in enforcing its
copyrights would not excuse any liability on the part of
Defendants for infringement.  Finally, the First Amendment is
generally a protection of free speech against intrusion by the
government, not as among and between private parties.  Thus,
amendment to include this defense is improper.

        As its proposed nineteenth separate defense, Defendant
Columbus Farmers Market avers that "as landlord of the Columbus
Farmers Market, [it] cannot be held liable for the acts or
omissions of the sub-tenants and/or lessees of its tenant
Columbus Flea World, LLC."  Plaintiffs argue, in opposition to
such amendment, that the law of secondary liability for copyright
infringement explicitly rejects the landlord-tenant model in
analyzing whether a flea market owner is liable for the
infringements of its tenants.  See, e.g., Fonovisa, Inc. v.
Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996)(rejecting
district court's "analogy to absentee landlord" in assessing flea
market's liability for copyright infringement); PolyGram Int'l
Publishing, Inc. v. Nevada/TIG, Inc., 855 F. Supp. 1314, 1325 (D.
Mass. 1994)(defendant trade show organizer more analogous to
department store operator than landlord).  The cases on which
Plaintiffs rely, however, turn on their underlying facts rather
than on a firmly established principle of black-letter law.

Here, the pleadings do not, as they did in <u>Fonovisa</u> for example, entirely rule out the possibility that Defendants' might successfully raise this defense.  The ultimate determination regarding Defendants' liability for their alleged vicarious copyright infringement will require that Plaintiffs establish two facts: (1) that Defendants have the right and ability to supervise the infringing activity, and (2) that Defendants have a direct financial interest in such activities.  <u>Fonovisa</u>, 76 F.3d at 262.  Here, Defendants argue that "the size of the Market and the number of tenants and subtenants make it impracticable to police every transaction at the Market," (Defs.' Reply Brief at 7), a point which, after discovery, may prove to afford them a valid legal defense.  Thus, at this early stage in the case, this Court will permit the proposed amendment.

As its proposed twentieth separate defense, Columbus Farmers Market avers that it is "in the position of an internet service provider ("ISP") as delineated in the 'safe harbor' provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 512."  As discussed with respect to Defendants' motion for reconsideration, <u>supra</u>, this defense is frivolous.  A flea market is not an "internet service provider" and the instant action has nothing to do with the internet or the Digital Millennium Copyright Act. Furthermore, this Court rejects Defendants' attempt to extend the

policy underlying this Act to the instant allegations.  For these
reasons, leave to file such an amendment is denied.

Thus, consistent with the discussion above, this Court will
allow Defendants to amend their answers to the numbered
paragraphs of Plaintiffs' Amended Complaint (to the extent that
those amendments do not conflict with the previous admissions
contained in Defendants' First Amended Answer), but will deny
leave to amend Defendants' additional separate defenses based on
their futility, with the sole exception being the proposed
nineteenth separate defense.

C.   <u>Plaintiffs' Motion to Dismiss Second Amended Counterclaims</u>

Plaintiffs argue that Defendants' Second Amended
Counterclaims should be dismissed without leave to amend as being
legally insufficient.

1.   <u>Standard of Review</u>

A Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted must be denied "unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."
<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A district court
must accept any and all reasonable inferences derived from those
facts.  <u>Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A.</u>, 761
F. Supp. 1100, 1107 (D.N.J. 1991); <u>Gutman v. Howard Sav. Bank</u>,
748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must

view all allegations in the Complaint in the light most favorable
to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox,
Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not necessary for the movant to plead evidence, and it
is not necessary to plead the facts that serve as the basis for
the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d
Cir. 1977); In re Midlantic Corp. Shareholder Litigation, 758 F.
Supp. 226, 230 (D.N.J. 1990).  The question before the court is
not whether movants will ultimately prevail; rather, it is
whether they can prove any set of facts in support of their
claims that would entitle them to relief.  Hishon v. King &
Spalding, 467 U.S. 69, 73 (1984).  Therefore, in deciding a
motion to dismiss, a court should look to the face of the
pleadings and decide whether, taking all of the allegations of
fact as true and construing them in a light most favorable to the
non-movant, the allegations state a legal claim.  Markowitz v.
Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Only the
allegations in the complaint, matters of public record, orders,
and exhibits attached to the complaint matter, are taken into
consideration.  Chester County Intermediate Unit v. Pennsylvania
Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

    2.  False Light and Defamation Counterclaims

    Defendants identify a handful of allegedly false and
defamatory excerpts from a press release ("Press Release") that

was posted on the website of non-party RIAA on October 8, 2003.
(Flea World Defendant Counterclaims ¶¶ 39-41; Ackerman and Pratt
Counterclaims ¶¶ 39-41; Columbus Farmers Market Counterclaims ¶¶
42-44.)  Defendants have identified five portions of the Press
Release which they argue support this claim: (1) the Press
Release's title: "New Jersey Flea Market Rife with Pirated Music
Targeted in RIAA Lawsuit"; (2) the Press Release's first
sentence: "Continuing and expanding its efforts to curb the
illegal trafficking of counterfeit music, the [RIAA] on behalf of
its member companies, has filed a copyright infringement lawsuit
against the owners of a Columbus, New Jersey flea market who
flagrantly and repeatedly ignored numerous demands to curtail the
sale of pirated CDs and cassettes"; (3) a Press Release statement
which reads: "The piracy of CDs and cassettes at the Columbus
Flea Market, one of the largest on the East Coast, has remained
rampant, despite numerous efforts by RIAA investigators"; (4) a
quote from RIAA President Cary Sherman, in which he discusses the
overall problem of sound recording piracy at flea markets in
general terms and specifically states his view that "[n]o one
should be able to turn a profit from shady vendors while turning
a blind eye to blatant piracy on their premises"; and (5)
Sherman's quote that "[p]hysical goods piracy continues to be a
serious problem for the industry, especially at flea markets.  We
make every effort to first educate and advise flea market

27

operators about their responsibilities under the law. . . . Flea
market operators who ignore their obligations and thumb their
noses at record companies, artists and legitimate retailers
deserve to be held accountable." (See Defendant Columbus Farmers
Market LLC's Second Amended Counterclaims, Ex. B.)

Defendants include claims for both false light and
defamation. To state a false light claim under New Jersey law,
Defendants must allege that Plaintiffs made statements about them
that "constitute a major misrepresentation of [their] character,
history, activities or beliefs," that such statements would be
"highly offensive to a reasonable person," and that Plaintiffs
acted with "reckless disregard as to the falsity of the
publicized matter." Botts v. New York Times Co., 2003 WL
23162315, *5-6 (D.N.J. Aug. 29, 2003). To state a defamation
claim under New Jersey law, Defendants must allege a false and
defamatory statement of fact about Defendants, that Plaintiffs
knew or should have known was false, and that was communicated to
third parties, causing damages. Beck v. Tribert, 711 A.2d 951,
953-59 (N.J. Super. Ct. App. Div. 1998).

Plaintiffs argue that Defendants' counterclaims for false
light and defamation fail, first of all, because many of the
statements which serve as a basis for the claims are true. The
challenged statements that "the [RIAA] on behalf of its member
companies, has filed a copyright infringement lawsuit against the

28

owners of a Columbus, New Jersey flea market," that Defendants were "[t]argeted in a RIAA Lawsuit," and the statements concerning police raids and piracy occurring on Defendants' premises have all been admitted by Defendants previously.  (See Defendants' Amended Answer at ¶¶ 2, 34, 37-39.)  Truth is a complete defense to both false light and defamation.  See e.g., Bender v. Smith Barney, Harris Upham & Co., Inc., 901 F. Supp. 863, 871 (D.N.J. 1994)("truth is a defense to a charge of defamation"); Restatement (Second) of Torts § 652E comment a, at 395 ("essential to both a false light privacy claim and a defamation claim is a determination that 'the matter published concerning the plaintiff is not true'").

Defendants now argue, contrary to their prior judicial admissions contained in their Amended Answer, that the facts asserted in the Press Release are false.  However, as was made clear by the statements in Defendants' original Amended Answer, the basic fact that direct infringement by many vendors has occurred at Defendants' market is undisputed.  Defendants have previously admitted that they have engaged in the conduct charged; until recently, Defendants have only denied that their behavior makes them civilly liable.  (See Amended Answer at ¶¶ 2, 37, 38, 39; Amended Counterclaim at ¶¶ 5-7.)  It follows that, at the time Plaintiffs' remarks in the Press Release were made,

29

Plaintiffs and Defendants alike regarded such statements as not being untrue.

Plaintiffs next contend that the contested remarks not admitted throughout Defendants' own prior pleadings are non-actionable opinion.  Whether a given statement is one of fact or opinion is a question of law to be determined by the court.  Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin, 418 U.S. 264, 283-84 (1974).  Statements of RIAA President Sherman ("[n]o one should be able to turn a profit from shady vendors while turning a blind eye to blatant piracy on their premises" and "[f]lea market operators who ignore their obligations and thumb their noses at record companies, artists and legitimate retailers deserve to be held accountable") are Sherman's opinions on the problem of physical piracy.  As such, those opinions cannot form the basis of a claim for false light or defamation.  See Rinsley v. Brandt, 700 F.2d 1304, 1307 (10th Cir. 1983)("the defense available in a defamation action that the allegedly defamatory statements are opinions, not assertions of fact, is also available in a false light privacy action"); see also Nanavati v. Burdette Tomlin Memorial Hosp., 857 F.2d 96, 106 (3d Cir. 1988)("[t]he Supreme Court of New Jersey has held that 'statements of opinion are entitled to constitutional protection no matter how extreme, vituperous, or vigorously expressed they may be'").

Plaintiffs contend that Defendants' claim, therefore, must rest on adjectives with which they take issue such as "rife," "rampant," "flagrantly and repeatedly," "shady vendors," "blatant piracy," and "thumb their noses." However, statements that are "no more than rhetorical hyperbole or a vigorous epithet are not defamatory." Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 187 (3d Cir. 1999). Moreover, the law affords "a great amount of protection for statements that are obviously 'rhetorical hyperbole . . . .'" Mattel, Inc. v. MCA Records, Inc., 28 F. Supp. 2d 1120, 1160-61 (C.D. Cal. 1998), aff'd, 296 F.3d 894, 908 (9th Cir. 2002)(noting that the statements at issue were made by two companies involved in a lawsuit and the public would expect a vigorous debate between both sides in the press).

Defendants seek to distinguish this case from the statements to the press that were found non-actionable by the court in Mattel by arguing that the Press Release was "in the guise of a news report." (Defs.' Opp. at 10.) Defendants, however, cite no authority for the proposition that what purports to be a press release and is contained on Plaintiffs' own website should be construed as a "news report." The Press Release at issue bears the words "press room" in large letters at the top of the document, includes a general mission statement about the RIAA in italics at the bottom, and includes the name and phone number of an RIAA public relations person to contact for more information.

(See Defendant Columbus Farmers Market LLC's Second Amended
Counterclaim, Ex. B.)  As in Mattel, the context of the
statements at issue here were such that "the public obviously
knew that each side believed strongly in their position."  28 F.
Supp. 2d at 1161.

Plaintiffs further argue that even if Defendants could state
a prima facie claim for false light or defamation, those claims
still fail because the statements are protected by a qualified
privilege, as those Press Release statements merely report and
mirror the averments of the Amended Complaint.  "When an attorney
repeats the contents of a defamatory complaint to the press, he
is protected in making those statements . . . by the same
qualified privilege extended to others who publish the contents
of a filed complaint."  Cappello v. Scott, 644 A.2d 102, 103
(N.J. Super. Ct. App. Div. 1994); see also Scheidler v. National
Organization of Women, Inc., 739 F. Supp. 1210, 1215 (N.D. Ill.
1990)("we hold that those statements which accurately report
and/or summarize the contents of defendants' lawsuit against
plaintiff are protected by the fair comment rule, and plaintiff's
claims based upon those statements must be dismissed with
prejudice for failure to state a claim under Fed. R. Civ. P.
12(b)(6)").

Defendants argue that the Record Companies are not protected
by such a qualified privilege, as no such privilege exists in New

Jersey under these circumstances.  Defendants have seemingly misinterpreted New Jersey case law, however, on this point.  In Capello v. Scott, supra, the court expressly held that, in New Jersey, statements by an attorney to the press reporting on the filing of an alleged defamatory complaint were qualifiedly immune from suit, and required a showing of malice in order to be actionable.  274 N.J. Super. at 284.  See also Edelson v. Ch'ien, 2004 WL 422674, *6 (N.D. Ill. Jan. 28, 2004)(applying qualified privilege under New Jersey law to press release concerning the litigation).

Defendants, in arguing to the contrary, place primary reliance upon a dissent in American Dist. Tel. Co. v. Brink's, Inc., 380 F.2d 131 (7th Cir. 1967), a case from the Seventh Circuit.  The majority opinion in that case, however, which Defendants fail to discuss, affirmed the dismissal of a libel action concerning statements made in a press release regarding the filing of a lawsuit, recognizing "that under Illinois law there is a qualified privilege to report judicial proceedings" that could only be overcome by proof of malice, which was not present as a matter of law.  380 F.2d at 133.

Thus, case law is clear that, in order to overcome this qualified privilege, Defendants must plead malice.  Cappello, 644 A.2d at 103 ("no action will lie [for such a qualifiedly privileged statement] except on proof of malice in making it").

To meet this burden under New Jersey law, Defendants must plead
facts sufficient to show that Plaintiffs acted with malice and
may not rest on conclusory language.  Darakjian v. Hanna, 840
A.2d 959, 966 (N.J. Super. Ct. App. Div. 2004).  Here, Defendants
neither allege that Plaintiffs made these statements
"maliciously," nor do they set forth any facts to support such an
allegation.  Instead, as in Darakjian, Defendants employ
conclusory language  to state that Plaintiffs acted with
"knowledge and reckless disregard for their falsity."  Id., 840
A.2d at 966 ("the single conclusory assertion . . . that
defendants 'knew and/or reasonably should have known that [the]
statement . . . was false . . . does not pass muster" on a motion
to dismiss).[4]  Given this deficiency, Defendants' counterclaim
fails to adequately state a valid claim.

Defendants also argue that even if Plaintiffs are entitled
to a privilege of some kind, "the statements fall outside the

---

[4]Defendants' false light claim also fails for this lack of
specificity and conclusory pleading, notwithstanding the
privilege.  Knowledge or reckless disregard of the falsity of the
statements at issue is an essential element of a false light
claim under New Jersey law.  Botts, 2003 WL 23162315 at *5-6;
DeAngelis v. Hill, 847 A.2d 1261, 1271-72 (N.J. 2004) ("[I]n
order to succeed on a false light claim, plaintiff must
demonstrate that . . . the actor had knowledge of or acted in
reckless disregard as to the falsity of the publicized matter").
Defendants' conclusory allegations are simply insufficient to
survive a motion to dismiss.  See e.g., Moore v. Merrill, Lynch,
Pierce, Fenner & Smith, Inc., 1990 WL 105765, *4 (D.N.J. July 16,
1990)(dismissing false light claim under New Jersey law due to
"insufficient allegations in the complaint to support this
conclusory claim").

protection of the privilege because the Press Release was inaccurate, misleadingly incomplete, or unfair requiring a decision by the factfinder." (Defs.' Opp. at 9.) Defendants fail, however, to identify what exactly was inaccurate, incomplete or unfair about the Press Release. To this Court's reading, the Press Release mirrors the averments set forth in the Amended Complaint and does not provide the basis for the counterclaim asserted by Defendants.

     3.   <u>Trade Libel and Copyright Misuse Counterclaims</u>

This Court previously dismissed Defendants' First Amended Counterclaim, stating, "If Defendants, consistent with this Opinion . . . believe that their counterclaims <u>for false light,</u> <u>defamation, and/or tortious interference</u> can be amended with sufficient factual and legal basis to state a claim, then such a second amended counterclaim shall be filed within thirty (30) days of today's date." (July 12, 2004 Opinion at 15) (emphasis added). Despite Defendants' interpretation of this Court's language in its July 12, 2004 Opinion and Order, this Court did not invite Defendants to raise additional counterclaims, nor did it provide leave to do so. Any counterclaim that was not filed with Defendants' original Answer requires leave of Court, pursuant to Fed. R. Civ. P. 13(e) and (f), which Defendants have not sought here. On this basis alone, it would be appropriate for this Court to strike Defendants' Second Amended Counterclaims

35

for trade libel and "declaratory judgment."  However, because
this Court assumes that Defendants would seek such leave, and for
the sake – once again – of addressing the issue without delay, it
will nevertheless discuss the merits of these additional
counterclaims.

    a.   <u>Trade Libel Counterclaim</u>

    To state a claim for trade libel under New Jersey law,
Defendants must allege (1) publication, (2) with malice, (3) of
false allegations concerning their property, product or business,
and (4) special damages.  <u>F.D.I.C. v. Bathgate</u>, 27 F.3d 850, 870-
71 (3d Cir. 1994)(trade libel claim under New Jersey law requires
that the statements at issue are false); <u>Mayflower Transit, LLC
v. Prince</u>, 314 F. Supp. 2d 362, 378 (D.N.J. 2004).

    Defendants have not shown falsity and have failed to
sufficiently plead malice, as previously discussed above with
respect to Defendants' defamation and false light claims.  In
addition, Defendants have not pleaded special damages, as
required to state such a claim.  <u>See Mayflower Transit, LLC</u>, 314
F. Supp. 2d at 378 ("the need to prove such special damages
requires that Plaintiffs 'allege either the loss of particular
customers by name, or a general diminution in its business, and
extrinsic facts showing that such special damages were the
natural and direct result of the false publication'")(citation
omitted); Fed. R. Civ. P. 9(g)("When items of special damage are

claimed, they shall be specifically stated"). Stating that Defendants were "damaged" and that the statements "curtail legitimate business" is simply not sufficient. Thus, Defendants' counterclaim for trade libel shall be dismissed as legally insufficient under well-settled New Jersey law.

      b.  <u>Copyright Misuse Counterclaim</u>

Defendants also assert a counterclaim for copyright misuse. As a preliminary matter, copyright misuse is not a claim but a defense, and Defendants may not transmute it into an independent claim merely by labeling it one for "declaratory judgment." <u>Metro-Goldwyn-Mayer Studios, Inc.</u>, 269 F. Supp. 2d at 1226 ("Separately litigating [the copyright misuse defense] in a declaratory posture would not serve the purposes of declaratory relief, such as clarifying and settling the legal relations of the parties, or affording a declaratory plaintiff relief from the 'uncertainty, insecurity, and controversy giving rise to the proceeding.'") (citation omitted). Moreover, case law suggests that the defense of copyright misuse "has rarely been upheld as a defense to a claim of copyright infringement." <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 253 F. Supp. 2d 943, 965 (E.D. Ky. 2003), <u>vacated on other grounds</u>, 387 F.3d 522 (6th Cir. 2004).

Nevertheless, Defendants assert two bases for their copyright misuse counterclaim. First, Defendants state that

37

Plaintiffs "have entered into a business strategy to use their
copyrights improperly in an attempt to chill and quash all lawful
sales of used or second hand musical sound recordings at flea
markets like Columbus Farmers Market."  (Second Amended
Counterclaim of Flea World, Inc. and Flea World, LLC at 5.)  This
assertion, however, is merely a variant of Defendants'
affirmative defense, previously struck by this Court, that
Plaintiffs are seeking to prevent sales of used CDs in violation
of the "first sale" doctrine.  Nothing in the Second Amended
Counterclaim provides any factual support for the notion that
"plaintiffs seek to control areas outside of their grant of
monopoly" rather than simply lawfully "seek[ing] to control
reproduction and distribution of their copyrighted works,
exclusive rights of copyright holders."  A&M Records, Inc., 239
F.3d at 1027.  Instead, Defendants allege only that Plaintiffs
have filed lawsuits and otherwise sought to enforce their
copyrights.  This allegation, however, is insufficient as a
matter of law to state a copyright misuse claim, as the fact of
enforcing a valid copyright, without more, simply cannot
constitute copyright misuse.  See Lexmark, 253 F. Supp. 2d at
966.  See also Triad Sys. Corp. v. Southeastern Express Co., 64
F.3d 1330, 1337 (9th Cir. 1995)(enforcing copyright against
competitor who copied plaintiff's software was not misuse);
MicroStar v. Formgen, Inc., 154 F.3d 1107, 1114 (9th Cir.

38

1998)(rejecting claim that plaintiff engaged in copyright misuse by enforcing its copyright in computer game).  As this Court understands it, Plaintiffs seek, through this lawsuit, not to leverage their copyright to protect uncopyrightable information, but merely to enforce those copyrights.  The suit does not purport to target or otherwise involve any uncopyrighted information, nor do Defendants present a contrary understanding in this copyright misuse counterclaim.

The second basis for Defendants' copyright misuse claim is that Plaintiffs "[f]rom January, 1995 though December 22, 2000 . . . entered into an illegal price fixing agreements in order to stop the decrease in the price of CD's caused by several discount retailers like Best Buy, Circuit City and Target." (Second Amended Counterclaims of Columbus Farmers Market at ¶ 27.) However, Defendants aver that this practice ended in 2000, long before this lawsuit was filed, when Plaintiffs entered into "a consent order with the FTC requiring [Plaintiffs] to discontinue the minimum advertised pricing program."  It is well established that a finding of misuse "does not . . . invalidate plaintiff's copyright" for all time.  Alcatel USA, Inc. v. DGI Technologies, Inc., 166 F.3d 772, 792 n.81 (5th Cir. 1999).  Rather, a finding of misuse merely "precludes its enforcement during the period of misuse."  Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 342 F.3d 191, 204 (3d Cir. 2003) (citation omitted).

Therefore, a plaintiff "is free to bring a suit for infringement once it has purged itself of the misuse." <u>Lasercomb America, Inc. v. Reynolds</u>, 911 F.2d 970, 979 n.22 (4th Cir 1990).  Indeed, once the purported misuse ceases, no impediment to enforcement of the "misused" copyright remains.  <u>In re Napster, Inc. Copyright Litigation</u>, 191 F. Supp. 2d 1087, 1108 (N.D. Cal. 2002)("The doctrine does not prevent plaintiffs from ultimately recovering for acts of infringement that occur during the period of misuse. The issue focuses on when plaintiffs can bring or pursue an action for infringement, not for which acts of infringement they can recover.").

Moreover, Defendants base their contention that "[w]hether a plaintiff may retroactively sue for infringement of its copyright during a period of misuse of the copyright is an unsettled issue" is based on dicta from a patent misuse case, <u>U.S. Gypsum Co. v. National Gypsum Co.</u>, 352 U.S. 457 (1957), in which the Supreme Court reversed the lower court's unsupported finding that the misuse remained "unpurged" as of the time of suit, precluding enforcement of the patent.  <u>Id</u>. at 463.  However, in a case directly on point, the Supreme Court held that once misuse has ended, no limitation remains on a suit to enforce a patent. <u>Morton Salt Co. v. G.S. Suppiger Co.</u>, 314 U.S. 488, 493 (1942) ("Equity may rightly withhold its assistance from [a misuse] of the patent by declining to entertain a suit for infringement, and

should do so at least until it is made to appear that the improper practice has been abandoned and that the consequences of the misuse of the patent have been dissipated."). Unlike the patent misuse in U.S. Gypsum Co. in which the effects allegedly were still being felt, there is no averment in this case that there is any such continuing effects of the supposed conduct charged in the price-fixing inquiry.

While Defendants have alleged that Plaintiffs engaged in conduct that violates the antitrust laws, the law is clear that copyright misuse is not a general proscription against any conduct that constitutes antitrust or otherwise is anticompetitive. Orth-O-Vision, Inc. v. Home Box Office, 474 F. Supp. 672, 686 (S.D.N.Y. 1979) ("As a general rule, it is no defense to a copyright infringement claim that the copyright owner is violating the antitrust laws."). To state such a claim, the counterclaimant "must establish a 'nexus between . . . alleged anti-competitive actions and [the counterdefendant's] power over copyrighted material.'" Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 192 F. Supp. 2d 321, 345 (D.N.J. 2002). Defendants here assert that Plaintiffs sought to enforce minimum prices on physical goods (CDs and cassettes) at major retail outlets with whom they had partnered. However, Defendants do not allege any true "nexus" between Plaintiffs' "power over copyrighted materials" and the allegedly anti-competitive conduct

at issue here.  Defendants attempt to establish the requisite
nexus by arguing that the Record Companies engaged in an illegal
price fixing scheme in an effort to stop a decrease in the price
of CDs caused by several discount retailers that was linked to
the companies' denial of advertising support to those retailers
who did not abide by the minimum advertised pricing regulations.
(See Second Amended Counterclaims of Columbus Farmers Market at ¶
28.)  Defendants contend that these discount retailers were
unable to get advertising support elsewhere because of the Record
Companies' monopoly over these products and this monopoly is
based solely on the Record Companies' copyrights.  These
allegations of price fixing, however, have nothing to do with
Plaintiffs' copyrights; rather, they have to do with Plaintiffs'
withholding of advertising support to their customers in exchange
for setting a minimum price for copies of the physical CDs.
Withholding advertising expenditures has nothing to do with
leveraging copyrights.  Defendants have not alleged conduct
connected to any copyrighted work, but merely conduct in which
the providers of any good or service, copyrighted or not, could
engage.  See Video Pipeline, 342 F.3d at 205-06 (rejecting misuse
defense where defendant did not contend that the alleged
agreements were "likely to interfere with creative expression to
such a degree that they affect[ed] in any significant way the
policy interest in increasing the public store of creative

42

activity"). Thus, Defendants' counterclaim for copyright misuse must be dismissed.

**<u>CONCLUSION</u>**

For the reasons expressed above, this Court will deny Defendants' motion for reconsideration of its July 12, 2004 Opinion and Order. In addition, the Court will permit Defendants' to amend their answers to Plaintiffs' Amended Complaint as follows: Defendants are granted leave to amend their responses to the numbered paragraphs of Plaintiffs' Amended Complaint; however, to that extent that Defendants' new responses contradict their prior judicial admissions, those amendments shall not supercede and replace Defendants' original answers, which shall be restated in the new pleading. Moreover, this Court denies Defendants' request for leave to amend its affirmative defenses as such amendment would prove futile, as explained above, except as to the nineteenth affirmative defense, which may be amended. Finally, the Court grants Plaintiffs' motion to dismiss Defendants' Second Amended Counterclaims and to strike certain defenses with prejudice. The accompanying Order is entered.

January 27, 2005          **s/ Jerome B. Simandle**
Date                      JEROME B. SIMANDLE
                          United States District Judge

43